STATE of Missouri ex rel. Lawrence SPERANDIO, Relator,

v.

Honorable Lewis W. CLYMER, Judge, 16th Judicial Circuit, Jackson County Circuit Court, Division No. 8, Respondent.

No. KCD 29573.

Missouri Court of Appeals, Kansas City District.

Feb. 6, 1978.

Motion for Rehearing and/or Transfer Denied Feb. 27, 1978.

Application to Transfer Denied April 10, 1978.

John C. Milholland, Harrisonville, E. J. Murphy, Butler, for relator.

Morris, Larson, King, Stamper & Bold, Roy A. Larson, Steven G. Emerson, Kansas City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER, DIXON, PRITCHARD, SOMERVILLE, and TURNAGE, JJ.

PRITCHARD, Judge.

## ORIGINAL PROCEEDING IN MANDAMUS

The issue involves the propriety of respondent's order dismissing relator's claim against William H. Snead, M.D., a defendant in the underlying action for medical malpractice, upon the ground that it was barred by the two-year statute of limitations. The alternative writ of mandamus issued herein recites that it appears from the petition for the writ that Dr. Snead is liable for conspiratorial concealment of relator's condition and injuries, by reason of which the five-year statute of limitations (after discovery) applies as to the action against him rather than the two-year statute of limitations for actions brought in medical malpractice.

The resolution of the issue requires an examination of Count II of relator's petition for damages, as it involves defendant Snead. But first, there must be a general statement of the allegations of Count I of that petition as to other defendants.

Defendants Michael and Yancey are licensed physicians and orthopedic surgeons in Springfield, Missouri. On or about September 12, 1967, relator, Sperandio, consulted them about a problem in his hips, a deformity as advised, resulting in a congenital condition of subluxation of the femoral heads. Michael and Yancey subsequently advised and performed surgery (December 2, 1967) upon Sperandio, after consultation with a Dr. Pemberton in Salt Lake City, Utah, who had devised a procedure to treat children of 12 to 14 years for the congenital subluxation and dislocation of the hip. Neither Michael nor Yancey knew what the modification was of the Pemberton Procedure for its performance on adults, and no such adult operation had ever been performed in Springfield, Missouri, all of which was wrongfully and intentionally concealed from Sperandio, and that he did not give consent to experimentation upon his person, and that the operation was performed without his informed consent and without his consent. Because the required modifications of the Pemberton Procedure were not made, Michael and Yancey negligently caused themselves to exert excessive force on Sperandio's left acetabulum, fractured it, replaced a fractured part with a screw which was bent by excessive force, and

were unable to move the roof of the acetabulum the required distance to remedy the subluxation as a direct and proximate result of failure to modify the surgical technique. Beside the basic malpractice particulars pleaded, Sperandio set forth that Michael and Yancey actively concealed the facts from him, and his family physician, and affirmatively falsely represented to him that his left hip bones had been moved to a proper position and that the intended result of surgery in the position of the hip bones had been achieved.

In the interim, and after consulting his family physician and an orthopedist in Joplin, Missouri (from whom it is alleged that Michael and Yancey withheld critical information of the surgery and its outcome), Sperandio went to the University of Missouri Medical Center for resistive exercises and physiotherapy and had progressed to the point that he was ready to be admitted for desirable corrective surgery. It is at this point, according to the pleadings, that Snead enters the picture. On December 9, 1968, Sperandio sought Snead's advice and counsel concerning his disabling condition and impending surgery at UMMC and Snead advised him to continue treatment at UMMC, and to follow the advice of physicians there.

As to the Count II claim asserted against Snead, it is further alleged that he, knowing that surgical intervention in Sperandio's hip joint would lay open to direct visual inspection the malpositioned fragments of his acetabulum, and reveal the extent of the damage which had occurred to his hip on the December 2, 1967, surgery, Snead joined in the conspiracy to conceal from Sperandio the condition of his hip and to prevent him from promptly receiving further remedial care which would reveal the true condition. Snead wrote a letter to UMMC on December 9, 1968, in which he warned that Sperandio had litigation in mind, "well-knowing and intending thereby to foreclose the chances of plaintiff's immediate access to the then-planned and contemplated remedial surgery at said medical center." Thereafter, it is pleaded, upon Sperandio's next visit to UMMC January 28, 1969, as was intended by Snead when he wrote the letter, the planned surgery was cancelled, and Sperandio "on April 29, 1969, was denied consideration for corrective surgery and has ever since that time been denied consideration for corrective surgery by that medical center, all as intended by defendant Snead as aforesaid." It is further pleaded that despite Sperandio's diligent efforts to gain information, Snead and other conspirators successfully concealed from him "the fact and plaintiff did not learn until on or about May 30, 1974, that his left femoral head remains in a subluxated condition and that said surgery was unsuccessful in correcting that condition as defendants, and each of them, claimed and continue to claim and misrepresent to plaintiff that it did, contrary to the fact. Said conspiracy to conceal and deny to plaintiff full and fair knowledge of the cause of his present disability, pain and suffering continues to the time of this petition."

Snead was joined as a defendant in a petition filed by Sperandio in Greene County, Missouri, on July 8, 1974, in which he affirmatively pleaded that he first learned, on or about May 30, 1974, that the surgery of December 2, 1967, contrary to representations made to him, had not remedied the condition of subluxation, that petition being based upon a claim of intentional, conspiratorial tort sounding in fraud. That petition was dismissed without prejudice on October 22, 1974, and that case was later refiled in Jackson County, Missouri, on January 3, 1975, joining a Jackson County resident (who was later dismissed out of the case). A second motion to dismiss of Snead, based upon the running of the 2-year statute of limitations [§ 516.140, RSMo 1969] was sustained on May 23, 1977, which dismissal gave rise to this proceeding in mandamus.

■ As noted, Sperandio, in his petition joining Snead, pleaded that he learned of the conspiratorial concealment on or about May 30, 1974. The petition was filed July 8, 1974, which is well within the maximum 15 year period of limitation [*Berry v. Dagley*, 484 S.W.2d 182, 184[2] (Mo.1972); *Heis-*

ler v. Clymer, 179 Mo.App. 110, 161 S.W. 337, 341[2] (1913); Yeager v. Wittels, 517 S.W.2d 457, 465[9] (Mo.App.1974) ] of § 516.-120, RSMo 1969, which provides, actions shall be brought "Within five years: * * (5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud."

The case is not one of Snead's alleged malpractice, which would bring into play the two-year medical malpractice statute of limitation, § 516.140, or if he were alleged to have fraudulently concealed his own malpractice (which is not the case), then the cases holding that the statute would be tolled (under § 516.280) by the fraudulent concealment would apply: e.g., Smile v. Lawson, 435 S.W.2d 325, 327[1] (Mo.banc 1968); Kauchick v. Williams, 435 S.W.2d 342, 347 (Mo.banc 1968).

■ What is here alleged is that Snead joined a preexisting fraudulent purpose of knowingly concealing Sperandio's true condition from him, and knowing that planned surgery at UMMC would reveal the previous malpractice and its concealment, taking steps to prevent that surgery by affirmatively, overtly writing the letter of December 8, 1968, warning that Sperandio had litigation in mind, all to Sperandio's damage, as alleged. The allegations are for a conspiratorial, intentional tort sounding in fraud, although that fraud was originally practiced by Michael and Yancey, as alleged. It is said in 15A C.J.S. Conspiracy § 19, p. 659, "To render a person civilly liable for injuries resulting from a conspiracy of which he was a member, it is not necessary that he should have joined the conspiracy at the time of its inception; every one who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it, * * *." See also 16 Am.Jur.2d, Conspiracy, § 48, p. 151. Following the allegations as to Michael and Yancey, down through Snead, it is clear that they smack of fraud as to each as the elements therefor are set forth in Barylski v. Andrews, 439 S.W.2d 536, 539[1–3] (Mo.App.1969), and as set forth in the Smile and Kauchick cases, supra, as to fraudulent concealment in malpractice cases.

Respondent, in his return, advanced a third reason to the above discussed two and five year statute of limitation reasons for sustaining the dismissal: that of failure to state a claim. Dismissal was not asked on the latter ground, and the court did not enter such an order.

Sperandio states a claim in fraud which is not barred because of the application of § 516.120, supra. The trial court erred in dismissing his action, and it should be reinstated as to defendant Snead, thus giving him the opportunity to prove his allegations.

Respondent's motion to dismiss the alternative writ or to strike relator's brief is overruled.

The Alternative Writ of Mandamus herein is made peremptory.

SWOFFORD, C. J., not participating.