Daniel BREEDEN, as the Personal Representative, has consented to the substitution of the Estate of Don Merchant, and Greg Katzing, individually and on behalf of Themselves and all others similarly situated consumers, Appellants,

v.

James N. HUESER, M.D., et al., Respondent.

No. WD 68069.

Missouri Court of Appeals, Western District.

June 30, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 2008.

Application for Transfer Denied Nov. 6, 2008.

Anthony L. Dewitt, Edward D. Robertson, Jr., Co–Counsel–Jefferson City, MO, for appellants Daniel Breeden and Greg Katzing.

John L. Roark, Columbia, for respondent J. Hueser, M.D.

Brian D. Malkmus, Springfield, MO, for Respondents David Payne, Lindall Perry and R.W. Schondelmeyer.

Susan F. Robertson, Esq, and Wade H. Ford, Jr., Esq., Columbia, MO, for respondents Robin Blount, James Brocksmith, Charles L. Chapman and Thomas J. Ciolino.

Susan F. Robertson, Esq., Kathleen C. Pitzer, Esq. and Wade H. Ford, Jr., Esq., Columbia, MO, for respondents Peter J. Cleavinger, Michele A. Diaz–Arias, Stephen W. Welsh, Donald G. Gerhardt, and Nicholas Llorens.

James P. Reinert, Esq., and Teresa D. Pupillo, Esq., St. Louis, MO, for respondents Ellen H. Thomas, M.D., Paula Stuebben, M.D., Lyle G. Breeding, M.D., and Robert J. Harris, M.D.

Elizabeth H. Weber, Esq., and Glen R. Ehrhardt, Esq., Columbia, MO, for respondent Medical Network Technologies, LLC.

Before DIV. II: HOLLIGER, P.J., LOWENSTEIN and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

### INTRODUCTION

The question presented here is whether a claim against a doctor that arises out of unauthorized and duplicative billing practices falls within the range of actions subjected to the two-year statute of limitations applicable to certain actions brought against health care providers. *See* 516.105, RSMo Supp.2008.[1] Plaintiffs in this case appeal the circuit court's judgment of dismissal based on the two-year filing timeframe. This court finds that the Plaintiffs' claims are not subject to section 516.105 and reverses the circuit court's dismissal.

### FACTUAL BACKGROUND

On March 9, 2006, Plaintiff Ron Merchant, through his daughter and attorney in fact, Sue Berry, brought this suit against Dr. Hueser and others practicing under the name "Boone Clinic" in Columbia, Missouri. Along with Merchant, the petition claimed to represent as plaintiffs "all other similarly situated consumers" of Dr. Hueser's medical practice.[2] In an amended petition, Plaintiffs added Greg Katzing as a named plaintiff. The trial court later ordered the substitution of Daniel Breeden, personal representative of the estate of the deceased Ron Merchant, in the place of "Ron Merchant by and through Sue Berry" as a plaintiff.

According to the amended petition,[3] Merchant's wife received chemotherapy treatments from Dr. Hueser, the last of which was administered in September of 2001. Katzing was also one of Hueser's chemotherapy patients. He was last treated in 1997. The petition alleges that Dr. Hueser devised and executed a scheme to defraud his patients by treating multiple patients with doses of chemicals pulled from a single vial, where common medical practice and government regulations dictated that a new vial was to be used for each treatment. The scheme involved charging each patient the full price of a new vial for each treatment but sometimes providing them with the left-over chemicals from another patient's treatment. As this type of impropriety is difficult to detect, especially since the typical lay person has little to no knowledge of the rules and standards relating to the handling and administration of pharmaceuticals, Plaintiffs were not aware of the scheme until after the treatment had ended.

In November of 2005, Merchant and Katzing learned that Dr. Hueser had paid a settlement to the federal government for improperly billing Medicare multiple times for single-use chemotherapy vials. The petition claims it was not until that time that either Merchant or Katzing knew they had been improperly billed for the chemicals provided by Dr. Hueser. The amended petition names Dr. Hueser and twenty-

1. In pertinent part, section 516.105 states,

 All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of

 occurrence of the act of neglect complained of. . . .

2. The amended petition seeks certification of the claim as a class action.

3. Since this case was dismissed on the pleadings, the facts averred by the petition are treated as true for purposes of reviewing the judgment. *Arbuthnot v. DePaul Health Ctr.*, 891 S.W.2d 564, 565 (Mo.App.1995). Thus, the facts here are derived from Plaintiffs' amended petition.

two other doctors as defendants, as well as Medical Network Technologies, L.L.C. These other doctors are alleged to have carried on a de-facto partnership with Dr. Hueser by conducting business with him under the name "Boone Clinic." Boone Clinic is apparently not a registered business entity of any kind and is alleged to be an unofficial arm of Medical Network Technologies, L.L.C. Plaintiffs seek to hold all of the doctors vicariously liable for the acts of their partner, Dr. Hueser.

█ The amended petition claimed (1) that Dr. Hueser's actions created liability under chapter 407, the Merchandising Practices Act[4] (MPA); (2) that fraud was committed through implied representations that the drug being purchased and administered was compliant with certain requirements; and (3) that the twenty-three doctors making up the Boone Clinic joined in a civil conspiracy to defraud patients by re-using single-use vials of medication.[5] Several motions to dismiss were filed by various defendants, the most prominent argument being that the claims set forth in the amended petition should fall under the scope of section 516.105 and be barred by its two-year limitation on healthcare malpractice actions. The circuit court granted a dismissal based on the statute, stating "the court finds that the action alleged is one of malpractice related to health care for which damages are sought against alleged health care providers and that the period of limitations applicable is two years from the date of occurrence of the act complained of as specified in [section] 516.105." The trial court found

that the action was not commenced within two years of the most recent treatment of either Mrs. Merchant or Mr. Katzing. Plaintiffs' primary argument on appeal is that the trial court improperly branded the action as one for medical malpractice or negligence and applied the wrong statute of limitations.

### STANDARD OF REVIEW

█ In reviewing a trial court's grant of a motion to dismiss, this court gives the pleadings their broadest intendment, treats all alleged facts as true, and construes the allegations favorably to the plaintiff. *Arbuthnot v. DePaul Health Ctr.*, 891 S.W.2d 564, 565 (Mo.App.1995). If the facts pled and the reasonable inferences to be drawn therefrom, viewed most favorably to the plaintiff, show any ground for relief, the plaintiff has the right to proceed. *State ex rel. Sisters of St. Mary v. Campbell*, 511 S.W.2d 141, 145 (Mo.App. 1974). This court must affirm the trial court's ruling "if the motion [to dismiss] could have been sustained on any of the meritorious grounds raised in the motion," regardless of whether the trial court relied on that particular ground. *Owner Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 133 S.W.3d 162, 166 (Mo.App. 2004); *Burke v. Goodman*, 114 S.W.3d 276, 279 (Mo.App.2003). It will not, however, affirm the grant of a motion to dismiss on grounds not stated in the motion. *State, Dept., of Soc. Servs. v. Carroll Care Ctrs., Inc.*, 11 S.W.3d 844, 849 (Mo.App.2000). The standard for reviewing the grant of a

---

4. The MPA is designed to " 'preserve fundamental honesty, fair play and right dealings in public transactions.' " *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo.App.2006). Quoting (*State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828, 837 (Mo.App.2000)). The Act "supplements the definition of common law

fraud, eliminating the need to prove intent to defraud or reliance." *Id.*

5. Also included in the amended petition were claims of unjust enrichment and breach of an implied contract. Plaintiffs, however, expressly abandoned these claims in their appellate brief.

motion to dismiss is *de novo. Weems v. Montgomery,* 126 S.W.3d 479, 484 (Mo. App.2004).

1. STATUTE OF LIMITATIONS QUESTION

 Section 516.105 states, "All actions against physicians, hospitals ... [or] any other entity providing health care services ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of...." § 516.105, RSMo. The section's opening phrase "all actions against physicians" is qualified by the words "for damages for malpractice, negligence, error or mistake related to health care." *Rowland v. Skaggs Co., Inc.,* 666 S.W.2d 770, 772 (Mo. banc 1984) (Section 516.105 has been amended twice since *Rowland* examined its application in 1984. The pertinent language was unchanged.) "The legislature's use of the latter phrase evinces a desire to confine suits subject to the short statutory period in [section] 516.105 to those enumerated." *Id.* Because of this, the statute encompasses only those actions where a health care consumer "seeks damages for injuries resulting from some improper, wrongful, or careless acts or omissions on the part of a health care provider in the delivery of health care to the consumer." *Dunagan v. Shalom Geriatric Ctr.,* 967 S.W.2d 285, 288 (Mo.App.1998).

 Missouri courts look to the gist or gravamen of an action to decide whether it should be governed by the two-year statute of limitations. *See, e.g., Nat'l Credit Assocs., Inc. v. Tinker,* 401 S.W.2d 954, 959 (Mo.App.1966); *Barnhoff v. Aldridge,* 327 Mo. 767, 38 S.W.2d 1029, 1030

(1931). It is clear that an action that arises out of a doctor's malpractice or negligence in providing health care cannot avoid the application of section 516.105 merely because it is pled as a claim for fraud, misrepresentation, or breach of contract. *See M.M.H. v. J.P.C.,* 42 S.W.3d 16, 18–19 (Mo.App.2001); *Ley v. St. Louis County,* 809 S.W.2d 734, 737 (Mo.App. 1991); *Tinker,* 401 S.W.2d at 955, 959.[6] However, actions brought against doctors and health care providers are not automatically subject to 516.105. *See Cullom v. Crittenton,* 959 S.W.2d 915, 918 (Mo.App. 1998) (two-year statute of limitations does not apply to action against health care provider for falsifying consent for adoption); *Rowland v. Skaggs Cos.,* 666 S.W.2d 770, 773 (Mo. banc 1984) (two-year limitation does not apply to actions for contribution between health care providers); *State ex rel. Sperandio v. Clymer,* 563 S.W.2d 88 (Mo.App.1978).

This court, in *State ex rel. Sperandio v. Clymer,* examined a fraud claim against a physician with respect to the applicability of the medical malpractice statute of limitations. *See* 563 S.W.2d 88 (Mo.App.1978) (addressing section 516.140, RSMo 1969, which read "[a]ll actions against physicians, surgeons ... [and] hospitals ... for damages for malpractice, error, or mistake shall be brought within two years"). There, a physician joined a conspiracy to fraudulently conceal from the plaintiff and others physical evidence of malpractice committed by two other physicians. *Id.* at 89–90. This court granted a writ of mandamus, in effect overruling the motion to dismiss that had been granted by the trial court, explaining "[This] case is not one of [the defendant doctor's] alleged malprac-

6. The courts have also rejected attempts to plead around the two-year statute by denominating a claim that is essentially for malpractice as one for general negligence. *See Robin-son v. Health Midwest Development Group,* 58 S.W.3d 519, 522–23 (Mo. banc 2001); *Arbuthnot,* 891 S.W.2d at 565–66.

tice, which would bring into play the two-year medical malpractice statute of limitation." *Id.* at 91.

■ The *Sperandio* holding recognizes that bona fide fraud claims against physicians are outside the scope of the two-year medical malpractice limitation. *See Sperandio*, 563 S.W.2d at 91. In contrast, the claims that fall within the scope of section 516.105 are those for damages resulting from the acts of a physician in the delivery of health care to the consumer. *Dunagan*, 967 S.W.2d at 288. Like in *Sperandio*, the actions of the doctors in the instant case were only incidentally related to the delivery of health care. The core issues here are improper billing practices and the misrepresentation of a product sold to a consumer. Plaintiffs allege that Defendant Hueser charged his patients, with respect to each visit, for one unopened vial of chemotherapy chemicals. On some occasions, unknown to them, they were provided with a vial that had been exposed to contaminants by the previous removal of one or more doses. This discrepancy did not arise from Dr. Hueser's prescription of medicine, his administration of the therapy, or his application of professional judgment, but rather from his inaccurate billing, which produced a windfall in his favor. As such, the gravamen of Plaintiffs' action does not lie in the delivery of health care but in an improper business practice.

Furthermore, the nature of Defendants' actions do not fit under the categories of "malpractice, negligence, error or mistake," the types of actions to which the two-year statute's applicability is limited. The Plaintiffs' petition clearly asserts intentional acts by Defendant Hueser. Executing a scheme such as has been alleged cannot be categorized as negligence, error, or mistake. The remaining question then, is whether it would fit under the "malpractice" designation. For purposes of applying the two-year statute of limitations, Missouri courts have defined "malpractice" as the "improper performance by a physician or surgeon of the duties devolved and incumbent upon him and the services undertaken by him ... *whereby the patient is injured in body and health.*" *Spruill v. Barnes Hosp.*, 750 S.W.2d 732, 733 (Mo. App.1988) (quoting *Barnhoff v. Aldridge*, 327 Mo. 767, 38 S.W.2d 1029, 1031 (1931)) (emphasis added). The damages claimed in Plaintiffs' petition are not based on the effect of Dr. Hueser's conduct on the body or health of his patients. Instead, they are economic damages resulting from the provision of a chemical that was of lesser value than what was billed to the client. The fact that it may be difficult at trial to prove extensive actual damages to the Plaintiffs is not an issue here. The gravamen of the action here is fraud due to the alleged deceit of Defendant Hueser to gain a monetary benefit. On these facts, section 516.105 is inapplicable.

## 2. FEDERAL PREEMPTION

■ After Plaintiffs filed their original and amended petitions, Defendants removed the case to the U.S. District Court for the Western District of Missouri. As the basis for their argument that a federal question was raised, Defendants asserted that Plaintiffs' claims relied on federal statutes, specifically those encoded in the Food, Drug and Cosmetic Act (21 U.S.C. § 301 *et seq.*). The federal district court granted Plaintiffs' motion to remand, explaining that "unless the FDCA component of the case is determinative of the outcome ... mere reference to [the] FDCA and its regulations as an element of the state claim does not provide a basis for federal question jurisdiction." *Merchant v. Hueser*, No. 06–4079–CV–C–NKL, 2006 WL 2246436, at*5 (W.D.Mo. Aug. 4, 2006) (not reported in F.Supp.2d). In resolving the

federal question issue, the court also rejected Defendants' argument that Plaintiffs' claims were preempted on the basis of their potential reliance on FDCA standards to establish an element of the Merchandising Practices Act claim. *Id.* at \*3. Noting that "[p]laintiffs can satisfy the elements of their [MPA] claim without any reference to the FDCA or its regulations," the district court found that, because relief was not being sought based on a violation of the FDCA and because MPA violations can occur in absence of FDCA standards, there was no basis for preemption. *Id.*

Although the federal district court already addressed the issue of preemption of Plaintiffs' claims by the FDCA in its remand to state court, this does not prevent a state court from thereafter dismissing the case based on its own determination that the claims are preempted. *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 646–47, 126 S.Ct. 2145, 165 L.Ed.2d 92 (2006). For that reason, this court will consider preemption as a possible basis on which to uphold the dismissal of Plaintiffs' claims.

Defendants stress that the FDCA provides no private right of action (*see* 21 U.S.C. § 337; *Ethex Corp. v. First Horizon Pharm. Corp.*, 228 F.Supp.2d 1048, 1052 (E.D.Mo.2002)) and argue that allowing a plaintiff to bring an action under state law that uses the FDCA to establish part of the claim allows private enforcement of the Act. To support a dismissal, this argument relies on the assertion that Plaintiffs cannot bring their claim without referencing the FDCA or FDA regulations promulgated under that Act. This court agrees with the federal district court's assessment that Plaintiffs' claims can, in fact, be brought independently of the federal Act. Plaintiffs pled violations of the MPA, fraud, and civil conspiracy. All of these claims share a common nucleus, they

stem from Dr. Hueser's actions in charging for a full, unopened vial of chemotherapy chemicals and providing chemicals from vials that were not as represented. The viability of each claim hinges on proof that such chemicals were, as the petition states, "impliedly represented to be full-strength, single-use chemotherapy medications." According to the petition, this implied representation stems from the assumption that when such medications are administered, they are administered in accordance with the proper medical standards. Defendants' preemption argument suggests that the only way Plaintiffs could prove such standards is through reference to the FDCA and FDA regulations. However, there is no reason why Plaintiffs would be dependent on federal law to establish their implied representation theory. As Plaintiffs note, they could look to the state standards for handling pharmaceuticals contained in chapter 338, RSMo and the accompanying regulations collected at 20 C.S.R. 2220–2 as proof of an implied representation made by Dr. Hueser to his patients. Since the claims set forth in the petition are not dependent upon the FDCA or FDA regulations for their existence, Plaintiffs' action does not constitute an invalid attempt by an individual to enforce a regulatory scheme with no private right of action. The claims are not preempted.

Defendants' reliance on *Anthony v. Country Life Manufacturing* to support their preemption argument is misplaced. In that case, the plaintiff brought an action under the Illinois Consumer Fraud and Deceptive Business Practices Act, essentially claiming a violation of that Act based on non-compliance with the FDCA. *See Anthony v. Country Life Mfg.*, No. 02C 1601, 2002 WL 31269621 (N.D.Ill. Oct.9, 2002) (not reported in F.Supp.2d). The state law claim was based entirely on the alleged violations of the FCDA and FDA

regulations. *See Id.* at *1. The court stated that the claim was preempted because it was "premised solely upon a violation of the FDCA—that defendant sold nutrition bars containing ingredients that the FDA had not approved." *Id.* at *3. Since Plaintiffs' claims in the case at bar are not premised solely on the FDCA, *Anthony* is not applicable.

### 3. EXISTENCE OF A PARTNERSHIP

██ Certain defendants argued in their motion to dismiss that Plaintiffs failed to properly plead the existence of a partnership, joint venture, or agency relationship in the petition and, for this reason, the only party against whom the petition could have stated a claim upon which relief could be granted was Dr. Hueser. The motion suggested that claims against the other defendants should be dismissed. Because Plaintiffs seek to hold the other defendants vicariously liable for the acts of Dr. Hueser, those defendants argue that Plaintiffs' failure to specifically plead facts which, if proved, would be legally sufficient to establish the existence of a partnership, joint venture, or agency relationship is fatal to Plaintiffs' claim against them.

██ Plaintiffs respond that, by not filing a motion for a more definite statement, Defendants have waived the issue of the sufficiency of the petition with respect to allegations of partnership. While a motion for a more definite statement is one manner in which a defendant may complain about the sufficiency of pleadings, a motion to dismiss can also be used to raise the issue and Defendants here did not waive sufficiency by choosing to raise it in their grounds for dismissal. *See Sirna v. APC Bldg. Corp.*, 730 S.W.2d 561, 566 (Mo.App. 1987).

The petition states that Dr. Hueser was "in partnership with the other physician defendants [in the Boone Clinic]," that the Boone Clinic "consist[ed] of a de facto partnership of physicians and / or physicians' professional corporations," and that such partners in the Boone Clinic were "acting in concert with James N. Hueser to do business and make a profit ... were joint venturers ... and had held themselves out as the partners of James Hueser." With respect to each of the physician-defendants, the petition alleged "they were operating together as joint venturers pooling the profits and sharing the expenses of the operation of the Boone Clinic." It further states that the physicians of Boone Clinic were together engaged in the practice of medicine with the aim of making a profit. Most specifically, the petition sets out that "[o]n information and belief the business operated as a partnership with physicians responsible for splitting their share of the expenses and with partners receiving compensation based on the overall performance of the group practice."

██ Defendants claim that a plaintiff must allege a "definite and specific agreement" whereby the alleged partners agreed to place their "money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions" (quoting *Brotherton v. Kissinger*, 550 S.W.2d 904, 907 (Mo.App.1977) and *Morrison v. Labor and Indus. Relations Comm'n*, 23 S.W.3d 902, 907–08 (Mo.App. 2000)). Conclusions of the pleader that are not supported by factual allegations " 'are disregarded in determining whether a petition states a claim on which relief can be granted.' " *S. States, Inc. v. Sw. Mo. Bank*, 714 S.W.2d 956, 959 (Mo.App.1986). A blanket allegation that a "partnership" exists, without more, is a conclusion of the pleader. *See Id.* A partnership agreement may be written or oral, verbally expressed or implied from the acts and conduct of the

parties alleged to be partners. *Nesler v. Reed,* 703 S.W.2d 520, 523 (Mo.App.1985).

Looking at the facts pleaded in the light most favorable to the Plaintiffs and taking reasonable inferences in their favor, the petition sufficiently pleads the existence of a partnership. The petition essentially sets forth that a group of professionals came together to operate the Boone Clinic as a business for profit, that they used their labor and skill as physicians to produce such profits, that they shared the profits made by the operation as a whole, and that expenses (or losses) were to be borne by the group collectively. From these allegations, a "definite and specific agreement" to operate the Boone Clinic as a medical partnership can be inferred. As Plaintiffs sufficiently pled the existence of a partnership, and thus correctly pled at least one ground upon which Dr. Hueser's co-defendants could be held vicariously liable for his actions, this point is denied.

### 4. ABATEMENT OF RON MERCHANT'S CLAIMS

The petition focuses on injury to the economic interests of Greg Katzing and Ron Merchant as named plaintiffs representing a class of similarly situated persons. Defendants argue now, as they did previously in support of their motion to dismiss, that any claims Ron Merchant may have had against them abated upon his death and, consequently, that Daniel Breeden, the personal representative of Merchant's estate, is not a proper party in this action.

At common law, actions based in tort abated at the death of either the person wronged or the wrongdoer. *State ex rel. Nat'l Refining Co. v. Seehorn,* 344 Mo. 547, 127 S.W.2d 418, 420 (1939). In its discussion of abatement and survival, American Jurisprudence explains,

At common law survivable actions are those in which the wrong complained of affects primarily property and property rights, and in which any injury to the person is incidental, while non-survivable actions are those in which the injury complained of is to the person and any effect on property or property rights is incidental. The reason for the common law rule was that the need to redress purely personal wrongs ceases to exist either when the person injured cannot be benefited by a recovery or when the person inflicting the injury cannot be punished, while, since the property or estate of the injured person passes to his or her personal representatives, a cause of action for injury done to the property or estate can achieve its purpose as well after the death of the owner as before.

1 AM.JUR.2D *Abatement, Survival, and Revival* § 51 (2005). In Missouri, the common law rule of abatement prevails for tort actions except to the extent that it has been altered by statute. *Seehorn,* 127 S.W.2d at 420. By statute, Missouri provides for the survival of "[a]ctions for wrongs done to property or interests therein" and "causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party." §§ 537.010, 537.020, RSMo 2000. Such actions survive the death of both the party suffering injury and the party causing it. *Id.* The Plaintiffs in the action at bar have intentionally pled only economic damages from the alleged fraudulent acts of Dr. Hueser, ruling out any application of personal injury survivability under section 537.020. Thus, if Merchant's claims would have abated under the common law, they must fall under the designation of actions for "wrongs done to property or interests therein" to avoid dismissal.

Defendants cite two cases for the proposition that an action based on monetary

loss due to payment for medical services does not survive the death of the person making such a claim. *See Seehorn,* 127 S.W.2d at 423; *Ray v. Bartolotta,* 408 S.W.2d 838, 839 (Mo.1966). Since *Bartolotta* simply applied *Seehorn* without substantive discussion (*see Bartolotta,* 408 S.W.2d at 839), this court will focus its analysis on *Seehorn.* In that case, a man brought suit against multiple plaintiffs with respect to personal injuries suffered by his wife due to the alleged negligence of those defendants. *Seehorn,* 127 S.W.2d at 420. His claim was for deprivation of his wife's comfort, society, and services as well as the medical expenses he incurred in caring for his wife. *Id.* The husband died before his suit went to trial and the administrator of his estate was substituted for him as a party. *Id.* Looking at the statutes in existence at that time, the court concluded that the action for deprivation of comfort, society, and services was neither one for "personal injury," nor one for wrongs done to "property rights or interest." *Id.* at 420–24. In so deciding, the court distinguished between two types of pecuniary losses, those constituting injury to personal rights and those injuring property rights. *See Id.* at 422–23. The loss by a husband of the comfort, society, and services of his wife fell under the "personal rights" category. *See Id.* On this basis, the court explained:

> It is argued that even if the husband's cause of action does not survive to his administrator as to loss of comfort, society and services of his wife, it does as to expenses incurred by him in her behalf on account of her injuries. Those expenses were incident to the wife's injuries and occasioned thereby. They constituted an element, but only an element and not the main element, of the husband's cause of action. From the injury to the wife two causes of action arose,-one to the wife for her personal injury

and one to the husband for damages to him because of loss of her comfort, society and services and which included also the right to reimbursement for expenses necessarily incurred by him in attempting to cure the wife. But we think the husband had but one cause of action though several different elements might be taken into account in determining the amount of his damage. All the elements of his damage resulted, as to him, incidentally or consequentially because of the injury to his wife. If the injury to his wife, depriving him of-inter alia-her services, something of pecuniary value, was not a wrong done to his property right ... it is difficult to see how the medical and surgical expenses consequentially caused to him by her injury could be treated as of themselves constituting a wrong done to his property rights.... So to hold would be to hold, in effect, that two causes of action accrued to the husband,-one for damage for the loss of comfort, society and services of the wife, which would not survive, and one for expenses incurred in her behalf, which would survive. We do not believe the husband's cause of action is thus separable for the purpose of survival.

*Id.* at 423 (internal citations omitted). The case at bar is distinguishable from *Seehorn* in that Merchant's claims were not derived from or ancillary to an action for comfort, society, and services, leaving no need, in Merchant's case, to sever an arguably property-based claim from one which is inherently personal. Merchant's claims have not abated simply because they can be categorized as actions based on monetary loss due to payment for medical services

With regard to Merchant's claim for fraud, *Foster v. Hesse* discusses the abatement of a fraud claim and is instructive.

*See* 43 S.W.2d 891 (Mo.App.1931). In *Foster*, the plaintiff sought damages from the defendants for fraudulently disbursing money, assessed as taxes on land for the maintenance of a water drainage district, to a contractor who had not provided any consideration for the disbursements. *Id.* at 891–92. A demurrer was filed in the trial court by the administrator of a deceased defendant's estate on the grounds that the action sounded in tort and that such actions did not survive the death of the tortfeasor. *Id.* at 892. The trial court overruled the demurrer and the appellate court agreed that the claim had not abated. *Id.* The appellate court explained that "our courts have uniformly held that an action for wrongs done to property rights or interest of another ... survive both in favor of the person injured and his executor or administrator and against the wrongdoer, or his executor or administrator." *Id.* at 893.

Merchant's fraud claim is similar to the claim of the plaintiff in *Foster* in that both involved a loss of money due to the fraudulent actions of the defendants. Clearly, in *Foster*, the court found that such a claim involved wrongs done to interests in property. For this reason, Merchant's fraud claim survives his death.

■■■■ On the same basis, Merchant's claim for civil conspiracy also survives. A claim for civil conspiracy sounds in tort and allows a plaintiff to hold multiple conspirators liable for his damages. *State ex rel. Willman v. Marsh,* 720 S.W.2d 939, 940 (Mo. banc 1986); *see Taylor v. Compere,* 230 S.W.3d 606, 611 (Mo.App.2007). In Missouri, there has been no distinct form of writ or action for civil conspiracy, but the action is of the nature of an action on the underlying wrong that is the subject of the conspiracy. *Byers Bros. Real Estate & Ins. Agency, Inc. v. Campbell,* 353 S.W.2d 102, 105 (Mo.App.1961). The

gist of the action is not the conspiracy itself, but "the wrong done by acts in furtherance of the conspiracy." *Chmieleski v. City Products Corp.,* 660 S.W.2d 275, 285–86 (Mo.App.1983). Here, the underlying wrong is the fraudulent taking of certain amounts of money from Plaintiffs, and this court has determined that a claim on such a wrong does not abate on the death of a plaintiff. Since the conspiracy claim is of the same nature and is similarly for a wrong "done to property or interests therein," it also survives.

■■■■ As to Merchant's MPA claim, there is no Missouri statute that specifically exempts actions under the MPA from abatement. Defendants urge this court to follow two opinions of the Texas Court of Appeals, San Antonio, which found that claims under Texas' Deceptive Trade Practices Act (DTPA) abate on the death of the consumer. *See Mendoza v. American Nat'l Ins. Co.,* 932 S.W.2d 605 (Tex.App. San Antonio 1996); *Lukasik v. San Antonio Blue Haven Pools, Inc.,* 21 S.W.3d 394 (Tex.App.San Antonio 2000) (citing *Mendoza* ). Defendants fail to note that the issue is not settled in Texas, since there is a split among the appellate courts in that state. *See Lukasik,* 21 S.W.3d at 402. The Fort Worth division of the Texas Court of Appeals has decided that claims under the DTPA should survive the death of the consumer. *See Thomes v. Porter,* 761 S.W.2d 592 (Tex.App.Fort Worth 1988). Other courts considering the abatement of actions arising under consumer protection statutes have been inconsistent in result and justification. *See People ex rel. Fahner v. Testa,* 112 Ill.App.3d 834, 68 Ill.Dec. 396, 445 N.E.2d 1249 (1983) (finding that an action under the Consumer Fraud and Deceptive Business Practices Act was one for "fraud or deceit" under Illinois' survival statute); *Thomes v. Porter,* 761 S.W.2d 592 (Tex.App.1988) (finding

that abatement would confound the purposes of the Texas Deceptive Trade Practices Act and noting that, in Texas, "suits for wrongful acquisition of property by fraud or deceit" survive the death of a party); *State v. Therrien,* 161 Vt. 26, 633 A.2d 272 (1993) (holding that abatement of claims under Vermont's Consumer Fraud Act would be inconsistent with the remedial purpose of the statute); *Bracken v. Harris & Zide, L.L.P.,* 219 F.R.D. 481 (N.D.Cal.2004) (using a three part test to determine if a statute was penal or remedial, actions based on penal statutes being subject to abatement on the death of a party). The approach found most convincing by this court is that taken by the Ohio Court of Appeals in *Nations Credit v. Pheanis.* See 102 Ohio App.3d 71, 656 N.E.2d 998 (1995).[7] The *Pheanis* court stated that survival depends primarily on the substance of the action and not the form of the proceeding brought to enforce it. *Id.* at 1003. It explained that, if the substance of a statutorily created claim falls into a category of actions which, otherwise, survive the statutory claim will survive regardless of whether the statute creating it provides for survival. *Id.* In this case, the substance of the claim is the recovery of a monetary loss incurred due to a fraud perpetrated by Defendant Hueser and the MPA is simply a vehicle for such recovery. Since this court has decided above that a fraud claim survives in this instance, it follows that an MPA claim of the same substance should not abate on the death of a plaintiff.

**5. ADDITION OF KATZING AS A PLAINTIFF**

Another ground stated by Defendants for dismissal is that Plaintiff Katzing is an improper party because leave was not granted by the circuit court for his addition as a plaintiff. Katzing was added to the suit by Plaintiffs' first amended petition. Defendants argue that Rule 52.06 requires leave to be granted before a party can be added and that, in the absence of such leave, the claims of the improperly added party must be dismissed.

While Rule 52.06 allows joinder of parties at "any stage of the action" pursuant to court order, Rule 55.33(a) allows a pleading to be amended once as a matter of course "at any time before a responsive pleading is served" and does not require leave of court to add a new party. See Rule 55.33(a); *Moss v. Home Depot USA, Inc.,* 988 S.W.2d 627, 631 n. 3 (Mo.App. 1999). A motion to dismiss is merely a motion and not a "responsive pleading." *State ex rel. Bugg v. Roper,* 179 S.W.3d 893, 894 (Mo. banc 2005). Plaintiffs' original petition was filed on March 9, 2006 and their first amended petition was filed on April 12, 2006. In the interim, Defendants filed motions to dismiss and motions for extension of time, but no responsive pleading. Since no responsive pleading had yet been filed on April 12, 2006, Plaintiffs did not need leave from the trial court to add Plaintiff Katzing as a party in their first amended petition.

**6. DISCHARGE OF OBLIGATION TO PAY**

Defendants' remaining ground for dismissal is that Plaintiff Katzing lacks

7. *Pheanis* dealt with an action for rescission that did not include a claim for damages. *Pheanis,* 656 N.E.2d at 1003. The *Pheanis* court, Ohio's second district court of appeals, noted that the third district of that court had previously found that an action for damages under Ohio's Consumer Sales Practices Act abated upon the death of the consumer. *Id.* Rather than ratify the third district's decision, the *Pheanis* court refused to comment on whether an action for damages would abate, as it was not necessary for its determination as to the claim for rescission. *Id.* It is the reasoning employed by *Pheanis,* and not its specific holding, that this court finds instructive.

standing to bring his claim due to the fact that he filed bankruptcy in October of 2005. According to Defendants, Katzing's claims became a part of the bankruptcy estate upon the filing of the Chapter 7 bankruptcy petition and no efforts were made by Katzing to schedule the claim as exempt from the bankruptcy estate. This, they argue, means that the right to bring suit belongs to the trustee in bankruptcy and not to Katzing, making him an improper party.

 Defendants' arguments here are not of the type properly considered in granting a motion to dismiss. Since they depend on the existence and timing of a bankruptcy petition and whether or not certain claims were exempt from a bankruptcy proceeding, certain facts would have to be established before the circuit court could make a determination. Evidence outside the pleadings cannot serve as the basis of granting a motion to dismiss. *Weems v. Montgomery*, 126 S.W.3d 479, 484 (Mo.App.2004); *see L.C. Development Co., Inc. v. Lincoln County*, 26 S.W.3d 336, 339–40 (Mo.App.2000). Under Rule 55.27, a motion to dismiss can be treated as one for summary judgment if evidence outside the pleadings is considered by the trial court and if certain procedural requirements are satisfied. *Arnold v. American Family Mut. Ins. Co.*, 987 S.W.2d 537, 539 (Mo.App.1999). The motion will not be treated as one for summary judgment though, where the record contains no evidence that the trial court considered matters outside the pleadings or notified the parties that it intended to review the pleadings and documents as a summary judgment motion. *Pikey v. Bryant*, 203 S.W.3d 817, 821 (Mo.App. 2006). Here, the judgment of dismissal states that the basis for the court's decision is the statute of limitations. There is no evidence that the circuit court considered evidence outside the pleadings on the bankruptcy issue. Because of this, the judgment is properly construed as granting a motion to dismiss and the outside evidence of bankruptcy cannot be considered as a basis for the judgment. Point denied.

<h3>CONCLUSION</h3>

The dismissal of this case by the circuit court is reversed and the case is remanded for further proceedings.

All Concur.