Christina MCCORMICK, Appellant,

v.

CENTERPOINT MEDICAL CENTER OF INDEPENDENCE, LLC, Respondent.

WD 80063

Missouri Court of Appeals, Western District.

OPINION FILED: May 23, 2017

Stacy Lake, Kansas City, MO, Counsel for Appellant.

Collin Altieri, Kansas City, MO, Counsel for Respondent.

William Shull, Kansas City, MO, Co-Counsel for Respondent.

Before Division Two: Thomas H. Newton, P.J., James Edward Welsh, and Karen King Mitchell, JJ.

James Edward Welsh, Judge

Christina McCormick appeals from the circuit court's judgment dismissing her petition for damages, in which she alleged that Centerpoint Medical Center of Independence, LLC, fraudulently misrepresented that it prepared and maintained medical records for a medical procedure that McCormick underwent at the medical center. The circuit court found that McCormick was attempting to reframe a medical malpractice claim into a fraud claim and dismissed the petition because the medical malpractice claim was time-barred by the two-year statute of limitations provided in section 516.105, RSMo Cum. Supp. 2013. McCormick appeals asserting that the circuit court erred in finding that the "gravamen or gist" of her petition was a claim for medical malpractice and not a claim for fraudulent misrepresentation and erred in concluding that her cause of action for fraudulent misrepresentation was time barred by the two-year statute of limitations for medical malpractice claims. We affirm the circuit court's judgment dismissing McCormick's petition.

These are the facts as alleged in McCormick's petition. On March 8, 2011, McCormick was admitted to the nuclear medicine clinic at Centerpoint for a hepatobiliary scan to determine the cause of inflammation in her gallbladder. Unidentified nurses and technicians injected McCormick with an unknown substance or substances for the purpose of tracing and identifying abnormalities that were causing pain in her abdomen. When the unknown substance was injected, McCormick suffered an extreme burning sensation beginning in her left arm and then throughout her entire body.

As part of the hepatobiliary scan, Centerpoint, through its unidentified nurses and technicians, made representations that medical records of the procedure were being prepared and maintained at the time of the procedure. According to McCormick's petition, unidentified nurses and technicians made these representations by "asking questions and recording [on Centerpoint's computer system] McCormick's responses to those questions and the activities taking place in the treatment room[.]" Centerpoint, through its Chief Medical Officer Christopher D. Sullivan, represented that no medical records of the procedure were prepared or maintained by Centerpoint at the time of the procedure on March 8, 2011. McCormick, therefore, claims that the representations by unidentified nurses and technicians that medical records were being prepared and maintained at the time of the procedure were false.

Further, McCormick alleged (1) that the representations that medical records were being prepared and maintained at the time of the procedure were material to her decision to continue with the hepatobiliary scan; (2) that Centerpoint knew or should have known that the representations were false; (3) that Centerpoint intended that she would act upon the representations and she acted in the manner reasonably contemplated by Centerpoint when she consented to continue with the hepatobiliary scan; (4) that she was ignorant of the falsity of the representations made by Centerpoint's unidentified nurses and technicians; (5) that she relied upon the representations being true when she decided to continue with the hepatobiliary scan; (6)

that she had the right to rely upon the representations made by Centerpoint's unidentified nurses and technicians; and (7) that, due to the lack or absence of medical records, she could not reasonably discover whether she had a cause of action for medical malpractice.

As a result, McCormick alleged that she "sustained direct, consequential and proximately caused physical and psychological conditions, including seizures and post-traumatic stress disorder, caused by the unknown substance(s) injected into her left arm on March 8, 2011, by unidentified nurses and technicians in Centerpoint's nuclear medicine clinic." McCormick claimed that she had been unable to produce Centerpoint's complete medical records for other medical professionals to accurately evaluate and diagnose her physical and psychological conditions and that she had "suffered the loss of employment as a result of her physical and psychological conditions directly, consequently and proximately caused by the unknown substance(s) injected into her left arm on March 8, 2011, by nurses and technicians in Centerpoint's nuclear medicine clinic." McCormick alleged that her damages "directly, consequently and proximately caused by Centerpoint's false representations are in an amount in excess of $1,000,000" and that "Centerpoint's conduct in failing to prepare and maintain medical records at or about the time of the hepatobiliary scan procedure was outrageous because of its reckless indifference to the rights of others." She also alleged that, if Centerpoint did possess records of the procedure, she feared that Centerpoint would destroy those records. McCormick, therefore, prayed for judgment against Centerpoint for actual and punitive damages, for costs, for an order directing Centerpoint to preserve all medical records for her hepatobiliary scan on March 8, 2011, and for further relief as the court considered just and proper.

In response to McCormick's petition for damages, Centerpoint filed a motion to dismiss the petition alleging that McCormick was attempting to circumvent the two-year statute of limitations for medical malpractice claims by characterizing her claim as a fraudulent misrepresentation claim rather than a medical malpractice claim. Centerpoint, therefore, requested that the circuit court dismiss McCormick's claim for medical malpractice because she failed to file her claim within the two-year statute of limitations provided in section 516.105. Moreover, Centerpoint also sought dismissal on the ground that McCormick failed to state a claim for fraudulent misrepresentation in that she failed to allege a causal connection between any alleged misrepresentations regarding medical records and her injury.

The circuit court granted Centerpoint's motion to dismiss, agreeing with Centerpoint that McCormick was attempting to reframe a medical malpractice claim into a fraudulent misrepresentation claim. The circuit court concluded that McCormick's claim for medical malpractice was time-barred by the two-year statute of limitations provided in section 516.105. In the alternative, the circuit court found that, even if McCormick's claim was truly one for fraudulent misrepresentation, her petition failed to set forth facts supporting each element for a fraudulent misrepresentation claim. In particular, the circuit court questioned whether McCormick "alleged the existence of a 'representation' at all," and the circuit court found that McCormick failed to allege any causal connection between the alleged misrepresentations and her loss. The circuit court dismissed McCormick's petition with prejudice. McCormick appeals.

We review the granting of a motion to dismiss *de novo. Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. App. 2012). "In reviewing the dismissal of a petition for failure to state a claim, including a dismissal due to the bar of a statute of limitations, we assume as true every fact pleaded and construe the allegations favorably to the petitioner." *Hamdan v. Bd. of Police Comm'rs for City of St. Louis*, 37 S.W.3d 397, 399 (Mo. App. 2001). Whether a statute of limitations bars an action is a question of law subject to *de novo* review. *Bateman v. Platte County*, 363 S.W.3d 39, 42 (Mo. banc 2012). If it clearly appears from the petition that a cause of action is barred by a statute of limitations, a motion to dismiss on that ground is properly sustained. *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997).

In her first point on appeal, McCormick contends that the circuit court erred in finding that the "gravamen or gist" of her petition was a claim for medical malpractice and not a claim for fraudulent misrepresentation. McCormick argues that the "gravamen or gist" of her claim was "Centerpoint's fraudulent misrepresentation that there were no medical records for the procedure" performed on March 8, 2011, and that she was "prevented from obtaining medical care from others because of Centerpoint's fraudulent misrepresentations." In her second point on appeal, McCormick asserts that the circuit court erred in concluding that her cause of action for fraudulent misrepresentation was time barred by the two-year statute of limitations for medical malpractice claims. Because her two issues on appeal are interrelated, we deal with them together.

Section 516.105 provides:

All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of[.]

This section "clearly covers all claims brought by consumers of health care services for injuries resulting from improper, wrongful or careless acts or omissions on the part of a health care provider in the delivery of health care to the consumer." *M.M.H. v. J.P.C.*, 42 S.W.3d 16, 19 (Mo. App. 2001). The two-year statute of limitations provided by section 516.105, however, cannot be circumvented by denominating the suit as one in contract or fraud. *Id.* A plaintiff cannot "pick a theory of recovery in order to choose a more advantageous statute of limitations or to avoid the two-year statute of limitations imposed by section 516.105." *Id.* "Attempts to characterize such actions as fraud or contract do not avoid the provisions of that section." *Id.* Thus, rather than looking solely to the form of the pleading, "Missouri courts look to the gist or gravamen of an action to decide whether it should be governed by the two-year statute of limitations." *Breeden v. Hueser*, 273 S.W.3d 1, 7 (Mo. App. 2008). "[T]he 'gravamen' of the complaint or a fair reading of the complaint in its totality, should determine [what type of cause of action is alleged] and then the applicable statute of limitations should be applied." *Wages v. Young*, 261 S.W.3d 711, 715 (Mo. App. 2008) (citation and internal quotation marks omitted). "The [statute of] limitation is not determined by the form of the action, but by its object." *Id.* (citation and internal quotation marks omitted). "It is clear that an action that arises out of a doctor's malpractice or negligence in pro-

viding health care cannot avoid the application of section 516.105 merely because it is pled as a claim for fraud, misrepresentation, or breach of contract." *Breeden*, 273 S.W.3d at 7.

The "gist or gravamen" of the action in McCormick's petition is a claim for medical negligence. Indeed, in her petition, McCormick alleged: "Plaintiff sustained direct, consequential and proximately caused physical and psychological conditions, including seizures and post-traumatic stress disorder, *caused by the unknown substance(s) injected into her left arm* on March 8, 2011, by unidentified nurses and technicians in Centerpoint's nuclear medicine clinic."[1] Further, she alleged: "Plaintiff also suffered the loss of employment as a result of her physical and psychological conditions directly, consequentially and proximately *caused by the unknown substance(s) injected into her left arm* on March 8, 2011, by nurses and technicians in Centerpoint's nuclear medicine clinic.[2] The source of the damages that McCormick contends were proximately caused by Centerpoint's actions were not caused by any alleged misrepresentations but by the unknown substance being injected into her arm. Thus, she was clearly seeking " 'damages for injuries resulting from some improper, wrongful, or careless act or omissions on the part of a health care provider in the delivery of health care to the consumer.' " *Breeden*, 273 S.W.3d at 7 (citation omitted).

This court's Eastern District found in a similar situation to this case that a claim for fraudulent misrepresentation brought by parents of a child afflicted with a genetic disease against a genetic counselor and physician was truly a claim for medical malpractice. *M.M.H.*, 42 S.W.3d at 19. In *M.M.H.*, the parents alleged in their peti-

tion that the genetic counselor and doctor knew that the genetic report issued to them was false and that the actual risk that the parents would produce a child with a genetic disease was significantly higher than that reflected in the report. *Id.* at 17-18. They also alleged that they had believed the information in the report to be true, that the false information was material to their decision to conceive a child, that they had relied upon the report in deciding to conceive a child, and that they would have refrained from conceiving a child if the report had stated the actual risk of the genetic disease. *Id.* at 18. The parents also alleged that the genetic counselor and doctor intended for them to rely on the information and that the genetic counselor's and doctor's misconduct was intentional and outrageous. *Id.* The parents requested damages for their child's medical expenses and lost wages, as well as punitive damages. *Id.* The circuit court dismissed the parents' petition because it was barred by the two-year statute of limitations applicable to medical malpractice claims. *Id.* The circuit court concluded that, "although the claim had been presented as one for fraud, the gravamen of the claim was for the negligent or wrongful rendering of health care services[.]" *Id.* On appeal, this court's Eastern District agreed and stated: "Although styled as a petition for fraudulent misrepresentation, Mother and Father's claim is essentially one for the negligent or wrongful rendering of genetic counseling health care services." *Id.* at 19. The court concluded that the parents' attempt to characterize their cause of action as one based in fraud did not circumvent the two-year statute of limitations provided for medical malpractice claims. The same is true in this case.

---

1. We added the emphasis.

2. We added the emphasis.

Because the gist of McCormick's petition was a cause of action for medical malpractice, McCormick was required to file any claim for damages arising out of Centerpoint's medical negligence within two years. McCormick was injected with the substance on March 8, 2011; therefore, her petition for medical malpractice had to be filed prior to March 8, 2013. McCormick did not file her lawsuit until March 5, 2016, which is almost three years after the expiration of the two-year statute of limitations for medical malpractice claims.

We, therefore, affirm the circuit court's judgment dismissing McCormick's petition with prejudice.

All concur.