Lloyd WHITE, Jr., and Becky White, Appellants,

v.

AUTO CLUB INTER–INSURANCE EXCHANGE, Robert Ernest Gould, and Gould And Thompson, P.C., Respondents.

No. WD 54674.

Missouri Court of Appeals, Western District.

Nov. 17, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1998.

Application for Transfer Denied Feb. 23, 1999.

Christopher Heigele, Kansas City, for Appellants.

Peter Sloan, Arlen Tanner, Kansas City, for Respondents.

SPINDEN, Judge.

Lloyd White, Jr., and his wife, Becky White, appeal the circuit court's summary judgment for Auto Club Inter–Insurance Exchange, Robert Ernest Gould, and Gould and Thompson, P.C. We affirm the circuit court's judgment.

The dispute stems from a collision on October 18, 1988, between cars driven by Larry Stephenson and Lloyd White. The Whites sued Stephenson for their injuries. Auto Club insured Stephenson under an automobile liability insurance policy, and, pursuant to the policy's terms, Auto Club defended Stephenson in the lawsuit. Auto Club arranged for Gould, an attorney with the law firm of Gould and Moore, P.C.,[1] to represent Stephenson in the lawsuit. On February 28, 1990, the Whites received a judgment against Stephenson for $126,250.

After obtaining the judgment, the Whites asked Gould to make an offer to Auto Club:

Part (1) Automobile Club Inter–Insurance Exchange will pay to Mr. and Mrs. White the full extent of its applicable liability insurance coverage for Mr. Stephenson, whatever that amount may be (which [plaintiff's counsel] understand[s] to be $50,000.00 plus liability for court costs and statutory interest on the judgment).

Part (2) Mr. and Mrs. White will receive an assignment from Mr. Stephenson of Mr. Stephenson's claim against Automobile Club Inter–Insurance Exchange for breach of its fiduciary responsibilities to Mr. Stephenson, including but not limited to Mr. Stephenson's claim against Automobile Club Inter–Insurance Exchange for bad faith refusal and failure to settle the claims of Mr. and Mrs. White for the offers of settlement that were made by Mr. and Mrs. White before trial within the policy limits of insurance coverage provided to Mr. Stephenson. Mr. Stephenson would assign to Mr. and Mrs. White all rights and causes of action Mr. Stephenson has against Automobile Club Inter–Insurance Exchange and against you and your law firm, both those arising from breach of contract with Mr. Stephenson and those arising in tort.

On March 13, 1990, Auto Club, through Gould, accepted the offer of Part (1) of the agreement without modification.

On March 17, 1990, the Whites and Stephenson agreed that the Whites would not

---

1. The firm's name changed to Gould and Thompson, P.C. When we refer to Gould, we are also referring to the firm.

execute the judgment against Stephenson's personal assets in exchange for Stephenson's agreeing that the Whites were entitled to "the policy limits of [his] liability insurance coverage[.]" Stephenson also agreed to assign to the Whites all causes of action which he had against Auto Club and Gould. On March 19, 1990, 19 days after the circuit court entered its judgment, Auto Club paid $50,000 to the Whites, the limit of Auto Club's insurance.

On February 12, 1995, Stephenson executed the assignment of all his causes of action against Auto Club and Gould. Five days later, the Whites sued Auto Club and Gould. Count I of their petition alleged that Auto Club breached its contact with Stephenson by not paying the "policy limits" as contemplated by the March 17, 1990, agreement and Auto Club's insurance policy. Count II claimed that Gould was negligent and breached his duties and responsibilities to Stephenson because Stephenson's interests conflicted with Auto Club's interests. Count III averred that Auto Club and Gould conspired to deprive Stephenson of the opportunity and rights he had to force Auto Club to pay the entire judgment entered against him because of Auto Club's bad faith and negligence. The Whites contended that, because of Auto Club's and Gould's actions, they were deprived of the use of the judgment's full amount.

Auto Club and Gould filed motions for summary judgments which the circuit court granted. The circuit court, however, entered judgment for the Whites against Auto Club for $977 to reimburse them for 19 days of statutory interest on the judgment of $126,250 ($592) and interest on the $592 of unpaid interest up to the entry of the summary judgment ($385). The Whites appeal.

In their first point, the Whites assert that the circuit court erred in entering summary judgment for Auto Club on Count I for breach of contract and in entering judgment for the Whites for only $977. They contend that Auto Club did not satisfy its contractual obligation to pay the "policy limits" as re-

quired by the agreement and the insurance policy. We disagree.

■ Auto Club agreed to pay the Whites the "full extent of its applicable liability insurance coverage for Mr. Stephenson[.]" The agreement said that the Whites understood that the full extent of applicable liability insurance coverage meant "$50,000.00 plus liability for court costs and statutory interest on the judgment." The agreement, however, did not control when, and how much, interest had to be paid. This was controlled by the language of Stephenson's insurance policy.

Stephenson's insurance policy provided, "The limit of liability shown in the Declarations for 'each **person**' for Bodily Injury Liability is our maximum limit of liability for all damages for **bodily injury**, including damages for care and loss of services, sustained by any one person and any one **auto** accident." [2] The policy's declarations page provided that the liability limit was $50,000 per person and $100,000 per occurrence. The policy also included a provision, entitled "Supplementary Payments," which said:

In addition to our limit of liability, we will pay on behalf of a covered person:

. . . .

3. Interest on all damages owed by a covered person as a result of a judgment in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.[3]

■ The issue is whether Auto Club's liability for interest on the entire judgment, which exceeded the policy limits, ended when it paid the Whites the limit of its coverage ($50,000) without paying the accrued interest on the entire judgment. The supplementary payment provision provided for compensation to a covered person "[i]n addition to [the] limit of liability." It was a separate obligation beyond the company's limit of liability of $50,000. "Costs and interest after judgment, even though they accompany or follow a judgment, are separate and apart from a judgment." *Levin v. State Farm Mutual Automobile Insurance Company*, 510 S.W.2d

---

2. The emphasis was in the original.

3. The emphasis was in the original.

455, 458 (Mo. banc 1974). The phrase, "[i]n addition to our limit of liability," referred to the limits for damages arising out of bodily injury. The limit of Auto Club's liability on the judgment—that is, "[the] limit of liability for this coverage"—was fixed by the limit of liability stated in the declarations ($50,000).

The Whites claim that the language in Stephenson's policy mirrored language which the Supreme Court said in *Levin* would make an insurer responsible for all interest accruing on the entire amount of a judgment until the insurance company paid or tendered the full amount of its liability under the policy. The *Levin* court said that an insurer was liable for an entire judgment only if its policy said: "until the company has paid or tendered such part of such judgment as does not exceed the limit of *the company's liability under the policy.*" *Id.* at 459 (emphasis added).[4]

Stephenson's policy set its limit at the "limit of liability for this coverage." Just as the court in *Levin* found that "thereon" is not synonymous with "under the policy," we find that "limit of liability for this coverage" is not synonymous with "the company's liability under the policy." *See also High v. Southern Farm Bureau Casualty Insurance Company,* 247 Ark. 373, 445 S.W.2d 507, 509 (Ark. 1969) (recognized and applied by *Levin,* 510 S.W.2d at 459). "[L]imit of liability for this coverage" referred to the limit of liability for the bodily injury coverage and was not pertinent to the payments provided in the supplementary provision.[5]

Under its policy, Auto Club was obligated to pay all interest accruing on the entire judgment—even though that amount exceeded the limit of its liability coverage—until it tendered the $50,000 to the Whites. Auto Club, therefore, was liable for the interest on the entire judgment which accrued during the 19 days after the circuit court entered the original judgment and before the $50,000 was paid to the Whites. Auto Club's liability for further interest, however, ended on March 19, 1990, when it paid the Whites the $50,000 policy limit. Auto Club's policy provided that when Auto Club offered to pay the $50,000—the "limit of liability for [its] coverage"—its duty to pay interest ended. The Whites' contention is, therefore, without merit.

■ In their second point, the Whites assert that the circuit court erred in entering summary judgment for Gould on their claim for malpractice.[6] The circuit court concluded that Stephenson could not assign his malpractice claim to the Whites. We agree.

Generally, Missouri law does not permit assignment of tort claims for personal injuries, for wrongs done to persons, to reputations, or to feelings, or those based on a contract of purely personal nature. *Beall v. Farmers' Exchange Bank of Gallatin,* 76 S.W.2d 1098, 1099 (Mo.1934). While the injuries sustained in a legal malpractice action involve property interests, the relationship between an attorney and his or her client is preeminently personal. *Christison v. Jones,* 83 Ill.App.3d 334, 39 Ill.Dec. 560, 405 N.E.2d 8, 11 (Ill.App.1980). Thus, the tort of legal malpractice cannot be characterized strictly as either personal or non-personal. *Id.*

Missouri courts have not directly ruled whether a legal malpractice claim can be

---

4. The policy in Levin said, "As respects the insurance afforded under coverages A and B and in addition to the applicable limits of liability to pay: ... costs taxed against the insured in any such suit and, after entry of judgment, all interest accruing on the entire amount thereof until the company has paid or tendered such part of such judgment as does not exceed the limit of the company's liability thereon[.]" 510 S.W.2d at 457–58.

5. The Whites also rely on *Grimes v. Swaim,* 971 F.2d 622 (10th Cir.1992), to contend that post-judgment interest is not tolled by the payment of the limit of liability by the insurance company. In Grimes, the court considered a policy which

said, "In addition to the limits of liability, we will pay for an insured any costs listed below resulting from such accident[:] ... Interest on all damages owed by an insured as the result of a judgment until we pay, offer, or deposit in court the amount due under this coverage." "Amount due under this coverage" is not synonymous with "limit of liability for this coverage" but is more akin to "limit of the company's policy under the policy." The language of the policy in this case specifically refers to the "limit of liability" for this coverage.

6. The Whites' claim for legal negligence is, in essence, a claim for malpractice.

assigned.[7] Other jurisdictions are split on the issue.[8]

The leading decision arguing against assignment is *Goodley v. Wank and Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (1976), in which the court reasoned that legal malpractice claims were not assignable because the practice of law is specialized and individualized and because an attorney's fiduciary duty and duty of confidentiality to his or her client invoke public policy concerns. *Id.* at 87. The *Goodley* court feared that assignment could lead to the acquisition of malpractice actions by economic bidders "who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty," and that this could "place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client."[9] *Id.*

Jurisdictions favoring assignment emphasize the purely economic nature of the harm in a legal malpractice claim. *Thurston v. Continental Casualty Company*, 567 A.2d 922, 923 (Me.1989), and *Hedlund Manufac-* *turing Company, Inc. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357, 359 (Pa. 1988). These courts reject the public policy concerns noted in *Goodley* on the ground that an attorney should not use his or her relationship with a client to shield himself or herself from a malpractice claim or to prevent a client from realizing the value of a claim by allowing its assignment to an interested party who has the resources to bring the lawsuit. *Id; Thurston*, 567 A.2d at 923.

*Goodley's* public policy concerns are persuasive. It is the majority position. We conclude, therefore, that the circuit court did not err in entering summary judgment for Gould on the Whites' claim for legal negligence.[10]

◼ In their last point on appeal, the Whites contend that the circuit court erred in entering summary judgment for Auto Club and Gould on their claim for conspiracy. The circuit court concluded that Stephenson could not assign any claim for conspiracy to the Whites. We agree.

The Whites concede the basis of their claim for conspiracy: that Gould had a conflict between the Stephenson's best interest and Auto Club's best interest and, because of

---

7. In *Laws v. O'Brien*, 718 S.W.2d 615 (Mo.App. 1986), this court's Eastern District considered whether a party could assign 50 percent of his interest in the outcome of a legal malpractice claim to another party. The court held, "'An unliquidated claim for damages arising out of a tort is not assignable either in law or in equity.'" *Id.* at 618 (quoting *Subscribers at Cas. Reciprocal Exchange v. Kansas City Pub. Serv. Co.*, 230 Mo. App. 468, 91 S.W.2d 227, 231 (1936), disapproved on other grounds, *General Exchange Insur. Corp. v. Young*, 357 Mo. 1099, 212 S.W.2d 396, 399 (1948)). The Laws court, however, did not consider whether legal malpractice claims were assignable as a class.

8. See 1 RONALD E. MALLEN AND JEFFREY M. SMITH, LEGAL MALPRACTICE § 7.8, at 501–05 (4 th ed.1996). The majority of jurisdictions which have considered this issue have concluded that a legal malpractice cause of action is not assignable.

9. The policy considerations were further discussed in MALLEN AND SMITH, *supra*, § 7.8, at 504: "A fundamental policy concern is the undesirable risk of tempering an attorney's zeal with concern that a present adversary may become the holder of the client's alleged legal malpractice claim if the client suffers an unsatisfactory result. As a prospective judgment creditor, the former adversary may view the attorney as a source of collection. Moreover, just as adverse parties have sued their opponent's lawyer for malicious prosecution, there are some who seek an assignment against their former adversary's counsel for retaliation. These concerns can directly or subjectively detract from an attorney's loyalty, dedication and zeal in pursuing the client's claim.... Another policy concern is the risk of eroding the confidences within the attorney-client relationship. Although the risk of an attorney disclosing confidences necessary to the defense exists in any legal malpractice action, ... allowing an assignment could result in restraining some clients from full disclosure if they kn[o]w they might offer a claim against their lawyers as part of the consideration to discharge a liability. A corollary of that concern is that a nonclient has no concern for whether prosecution of a malpractice claim injures the defendant's former client."

10. Our decision is limited strictly to the facts of this case. We do not determine whether other kinds of professional liability claims can be assigned.

this, Gould and Auto Club concerted to deprive Stephenson of the opportunity and rights he had to force Auto Club to pay the entire judgment. The Whites, therefore, allege a claim of conspiracy based on Gould's alleged legal malpractice. A legal malpractice claim is not assignable. Because Stephenson could not assign his claim for legal malpractice to the Whites, the Whites' claim for conspiracy fails. The circuit court, therefore, did not err in granting summary judgment for Auto Club and Gould on the Whites' conspiracy claim.

We affirm the circuit court's judgment.

VICTOR C. HOWARD, Presiding Judge, and PATRICIA A. BRECKENRIDGE, Judge, concur.