## Phyllis (Inman) FREEMAN and Jennifer (Tobin) Harcrow, Plaintiffs–Appellants,

v.

## Louis J. BASSO, Brown & James, P.C. and Rabbitt, Pitzer & Snodgrass, P.C., Defendants–Respondents.

### No. 25169.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 9, 2004.

Motion for Rehearing and Transfer to Supreme Court Denied Jan. 30, 2004.

Application for Transfer Denied
March 30, 2004.

Mark E. Turley, Colin P. Long, Smith, Turley & Long, Rolla, for Appellants.

Kenneth C. Brostron, Carolyn M. Kopsky, Lashly & Baer, P.C., for Respondents Louis J. Basso and Rabbitt, Pitzer & Snodgrass, P.C.

John Gianoulakis, Jennifer S. Forsythe, Kohn, Shands, Elbert, Gianoulakis & Giljum, LLP, for Respondents Brown & James, P.C.

NANCY STEFFEN RAHMEYER, Chief Judge.

In May of 1990, Gary Claus ("Claus") was involved in an automobile accident in which his car struck another car that was carrying four individuals. Two of those passengers were killed during the accident and the other two passengers suffered injuries. Following the accident, Claus, who had been driving while intoxicated, pled guilty to two counts of involuntary manslaughter. Jennifer Tobin Harcrow and Phyllis Inman Freeman (collectively "Plaintiffs") filed separate civil suits against Claus to recover damages for personal injury and wrongful death, respectively.[1] Ultimately, Jennifer Tobin Harcrow was awarded $2,500,000 in damages for her personal injuries and Phyllis Inman Freeman was awarded $800,000 in damages for the wrongful death of her son. Both damage awards were obtained via default judgments against Claus, who, prior to the commencement of the trials, filed a declaration with the trial courts in which he stated that he was incarcerated and uncounseled, and that he intended to avoid appearance.

Thereafter, on October 14, 1997, Claus filed a Voluntary Petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Almost a year later, on August 7, 1998, the bankruptcy trustee assigned to Plaintiffs, pursuant to a bankruptcy court order, any "bad faith claims against Leader Financial Insurance Company" and "any other potential claims" that Claus had "as a result of the incident between [Claus] and [Plaintiffs]." Claus' "bad faith claims" were claims against Leader National Insurance Company ("Leader"), the company with whom Claus had motor vehicle liability insurance, for breach of duty to defend, breach of duty to settle, and breach of fiduciary duty. The Eastern District of this Court dismissed those claims, which were brought by Plaintiffs by virtue of the trustee's assignment, for failure to state a cause of action in *Freeman v. Leader Nat'l Ins. Co.*, 58 S.W.3d 590, 596 (Mo.App. E.D. 2001). In reaching that result, the court noted that, after paying its policy limits to the trial court via interpleader, Leader had sought and received a declaratory judgment from the trial court which stated that Leader had no further duty to defend Claus. *Id.* at 594. The court found that because the declaratory judgment precluded Claus from bringing the claims against Leader, it similarly precluded Plaintiffs from bringing those claims. *Id.* at 597–99.

Plaintiffs' as assignees of Claus, allege, in the action currently before this Court, that Claus' "other potential claims" include claims for legal malpractice and breach of fiduciary duty against Louis J. Basso ("Basso"), his current law firm of Rabbit, Pitzer & Snodgrass, P.C., ("RPS") and his predecessor law firm of Brown & James, P.C., (collectively, "Defendants").[2] In response, Brown & James filed a Motion to Dismiss and Motion for Summary Judgment, and Basso and RPS filed a joint Motion for Summary Judgment. The trial

---

1. Jennifer Tobin Harcrow was one of the four individuals whose car was struck by Claus' car, and she filed suit to recover for the injuries she sustained during the accident. Phyllis Inman Freeman filed a wrongful death suit against Claus for the death of her son, Randy Williams, who was killed during the accident.

2. Basso was originally hired by Leader to represent Claus in the personal injury and wrongful death suits brought against him. Ultimately, Basso withdrew from the representation after Leader informed him that it had received declaratory judgment in its favor and would no longer be paying his legal fees, and Claus subsequently failed to make alternative arrangement for the continued payment of the legal fees.

court subsequently granted all motions filed by Defendants and dismissed Plaintiffs' claims with prejudice, finding that Missouri law prohibits the assignment of legal malpractice and breach of fiduciary duty claims. Plaintiffs now appeal the trial court's ruling. We affirm.

When reviewing a trial court's entry of summary judgment,[3] this court examines the record in the light most favorable to the party against whom judgment was entered, while giving the non-movant the benefit of all reasonable inferences from the record. *Andes v. Albano*, 853 S.W.2d 936, 940 (Mo. banc 1993); *see also ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We need not defer to the trial court's order granting summary judgment because it is founded on the law and the submitted record; thus, our review is essentially *de novo*. *ITT Commercial*, 854 S.W.2d at 376. We test the propriety of summary judgment, however, by using the same criteria that the trial court initially used in sustaining the motion. *Id.* Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(3).[4] A defending party may establish the right to summary judgment by showing

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT Commercial*, 854 S.W.2d at 381.

Plaintiffs raise two points on appeal. At the outset, however, we dismiss Plaintiffs' second point for failure to comply with the requirements for points relied on that are set forth by Rule 84.04(d). Specifically, while Plaintiffs' second point relied on provides the legal basis for their allegation of error, the point nonetheless falls short by its failure to "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1)(B)-(C). As such, Plaintiffs' point is little more than an "[a]bstract statement[ ] of law" which, standing alone, fails to comply with Rule 84.04(d); thus, Plaintiffs' second point is dismissed without further consideration.

3. Despite the fact that Brown & James filed a combined Motion to Dismiss and Motion for Summary Judgment and that the trial court sustained Brown & James' Motion to Dismiss, we will treat the trial court's judgment in favor of Brown & James solely as a grant of summary judgment. Rule 55.27(b) of the Missouri Supreme Court Rules provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04." The trial court clearly considered evidence extrinsic to the pleadings in ruling on the Brown & James motion and thereby treated the Motion to Dismiss as one for summary judgment. Plaintiffs have not alleged error in this procedure; thus, just as the trial court granted summary judgment to Basso and RPS, we will similarly analyze the trial court's judgment on the pleadings as grant of summary judgment in favor of Brown & James. Consequently, the same standard of review applies uniformly throughout our decision.

4. All rule references are to Supreme Court Rules (2003), unless otherwise indicated.

In their remaining point on appeal, Plaintiffs allege that the trial court erred in finding that Claus' claims for legal malpractice and breach of fiduciary duty were not assignable to Plaintiffs and in granting summary judgment to Defendants on that basis. In support of this contention, Plaintiffs argue that both the Supremacy Clause to the United States Constitution and the "exclusiveness of federal bankruptcy jurisdiction" permit a bankruptcy trustee to, in effect, trump state law by assigning a cause of action that is otherwise nonassignable under Missouri law.

Legal malpractice claims are not now and have never been assignable in Missouri. *See White v. Auto Club Inter-Ins. Exchange*, 984 S.W.2d 156, 160 (Mo. App. W.D.1998). In particular, the court in *White* noted that allowing this type of assignment

> could lead to the acquisition of malpractice actions by economic bidders "who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty," and that this could "place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client."

*Id.* (quoting *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal.Rptr. 83, 87 (1976)). The *White* court went on to note that

> [a] fundamental policy concern is the undesirable risk of tempering an attorney's zeal with concern that a present adversary may become the holder of the client's alleged legal malpractice claim if the client suffers an unsatisfactory result. As a prospective judgment

creditor, the former adversary may view the attorney as a source of collection. Moreover, just as adverse parties have sued their opponent's lawyer for malicious prosecution, there are some who seek an assignment against their former adversary's counsel for retaliation. These concerns can directly or subjectively detract from an attorney's loyalty, dedication and zeal in pursuing the client's claim.... Another policy concern is the risk of eroding the confidences within the attorney-client relationship. Although the risk of an attorney disclosing confidences necessary to the defense exists in any legal malpractice action, ... allowing an assignment could result in restraining some clients from full disclosure if they kn[o]w they might offer a claim against their lawyers as part of the consideration to discharge a liability. A corollary of that concern is that a nonclient has no concern for whether prosecution of a malpractice claim injures the defendant's former client.

*Id.* 160 n. 9 (quoting 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 7.8, at 501–05 (4th ed.1996)) (alteration in original).

When we turn to Plaintiffs' case, the facts before us demonstrate that the policy concerns raised by the *White* case are legitimate and not merely apocryphal. Here, we are faced with a situation in which the parties attempting to bring a claim for legal malpractice are the very parties who benefited from that malpractice (assuming that it occurred) during a previous stage of this litigation. The Missouri rule against assignment was created precisely so as to prevent this type of counterintuitive claim.

Notwithstanding Missouri's rule of nonassignability, Plaintiffs argue that, in *Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d

554 (Mo.App. S.D.1990), this court specifically sanctioned the practice of permitting a bankruptcy trustee to assign a cause of action that is otherwise nonassignable. While we reaffirm the continued viability of *Ganaway*, Plaintiffs' reliance on *Ganaway* is nonetheless misplaced due to the salient distinctions between that case and the facts currently before us. Most notably, in *Ganaway*, the assignment in question was neither an assignment of a legal malpractice claim nor an assignment of a breach of fiduciary duty claim against an attorney, which are the types of claim at issue before us. Instead, *Ganaway* featured the assignment of a claim against an insurance company for bad faith refusal to settle. *Id.* at 564. Even prior to *Ganaway*, bad faith claims against insurance companies were assignable. *Magers v. National Life & Accident Ins. Co.*, 329 S.W.2d 752, 756 (Mo. banc 1959); *see also Citicorp Indus. Credit Inc. v. Federal Ins. Co.*, 672 F.Supp. 1105, 1106–08 (N.D.Ill.1987)(interpreting Missouri law).

As mentioned previously, the rule against assigning claims for legal malpractice or breach of fiduciary duty is based on legitimate public policy considerations, and the same concerns do not apply to the assignment of claims for bad faith refusal to settle. Consequently, *Ganaway* does not address, let alone permit, the assignment of claims for legal malpractice or breach of fiduciary duty. Thus, *Ganaway* remains good law; it simply does not control the issue at hand.

■ Plaintiffs further argue, however, that the Missouri rule prohibiting assignment is ultimately preempted by federal bankruptcy law. Unless federal bankruptcy law has specifically preempted a state law restriction on property of the estate, the trustee's rights in the property are limited to only those rights that the debtor possessed pre-petition. *See Integrated Solutions v. Service Support*, 124 F.3d 487,

492–93 (3d Cir.1997); *see also In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987). This principle is reflected in the legal maxim *"assignatus utitur jure auctoris,"* which means that an assignee is clothed with the rights of his principal. *Black's Law Dictionary* 1620 (7th ed.1999). In other words, barring explicit federal preemption, the trustee does not have greater rights in the property of the estate than the debtor had prior to filing for bankruptcy. *See Integrated Solutions*, 124 F.3d at 493.

The trial court correctly ruled that the trustee was without authority to assign to Plaintiffs Claus' legal malpractice and breach of fiduciary duty claims; thus, Plaintiffs lack standing to sue on the state law tort claims. Consequently, Defendants are entitled to judgment as a matter of law, and the trial court's entry of summary judgment in their favor is affirmed.

PARRISH, J., and SHRUM, J., concur.