**VINSTICKERS, LLC., Appellant,**

v.

**STINSON MORRISON HECKER LLP, et al., Respondent.**

**No. WD 74028.**

Missouri Court of Appeals, Western District.

June 5, 2012.

Andrew B. Protzman, for Appellant.

Lawrence A. Rouse, for Respondents.

Before Division One: JOSEPH M. ELLIS, Presiding Judge, JAMES E. WELSH, Judge and ALOK AHUJA, Judge.

JOSEPH M. ELLIS, Judge.

VinStickers LLC appeals from the dismissal of its legal malpractice action against Stinson Morrison Hecker LLP and Stephen Cosentino ("Respondents"). For the following reasons, the trial court's decision is affirmed.

Stinson Morrison Hecker LLP is a law firm based in Kansas City, Missouri. Stephen Cosentino is a member of the firm. Respondents were originally retained to convert VinStickers from its prior corporate form into a limited liability company. Later, in 2007, VinStickers decided to remove its president, Eric Hinkle, and another employee, Ken Karg. VinStickers sought the help of Respondents in removing those two individuals. Hinkle and Karg were eventually removed from the company by a vote on September 11, 2007.

Subsequently, Hinkle and Karg filed suit in the Circuit Court of Jackson County alleging that they had been wrongfully terminated and that there had been procedural improprieties in their removal. In February 2009, VinStickers entered into a settlement agreement with Hinkle and Karg. In addition to agreeing to pay Hinkle and Karg $1,221,000.00, VinStickers agreed to "quitclaim assign to Hinkle and Karg, and each of them, any and all right, title and interest in and to any legal malpractice claims" VinStickers had against Respondents. The settlement agreement further provided that "Karg and Hinkle shall secure legal counsel to prosecute such Claims, and they may bring the Claims in the name of VinStickers . . . and may act in the name of, and on behalf of VinStickers for the limited purposes of pursuing, resolving and releasing the Claims."

Subsequently, the present action was filed in the circuit court, naming VinStickers as the plaintiff. In response, Respondents filed a motion to dismiss the petition, asserting several different legal theories. In relevant part, Respondents sought dismissal based upon an impermissible assignment of VinStickers legal malpractice claim to Hinkle and Karg.

After hearing oral argument on the motion, the trial court entered its Order and Judgment granting Respondents' motion and dismissing the petition with prejudice. The court found that VinStickers had impermissibly assigned its legal malpractice claim to Hinkle and Karg. The court further stated that "[a]llowing the present action to go forward would permit Hinkle and Karg to potentially benefit on a legal malpractice claim for which they not only

did not have an attorney-client relationship but also for which they were the principal benefactors of any existing negligence" and that "[t]his case is a perfect example of the reasons why the public policy of Missouri does not allow this Court to enforce an assignment of a legal malpractice claim." Appellant brings one point on appeal.

Although not referenced by the trial court or the parties, where "the parties introduce evidence beyond the pleadings, a motion to dismiss is converted to a motion for summary judgment." *Rule 55.27(a)*. "In order for the trial court to consider evidence outside of the pleadings and treat the motion to dismiss as a motion for summary judgment, the court generally must first give the parties notice that it is going to do so, and it must provide all parties a reasonable opportunity to present all materials made pertinent to a motion for summary judgment." *Brown v. Simmons*, 270 S.W.3d 508, 510–11 (Mo.App. S.D.2008). "A motion to dismiss may automatically be transformed into a motion for summary judgment even in the absence of such notice, however, when the parties imply acquiescence to the trial court's treatment of the matter as such." *Id.* at 511. "Implied acquiescence is found where the parties introduce evidence outside of the pleadings to the court and neither party objects to such evidence being considered by the court." *Id.*

In the pleadings related to the motion to dismiss, Respondents and VinStickers both rely upon and quote the language contained in the settlement agreement and do not dispute the existence of the agreement or the contents thereof. VinStickers attached as an exhibit to its Suggestions in Opposition to Defendant's Motion to Dismiss a copy of the agreement. The parties had no dispute over the material contents of the settlement agreement and merely argued over its legal effect. Moreover, VinStickers did not raise any objection to the trial court's consideration of the settlement agreement in ruling on Respondent's motion to dismiss. Under these circumstances, the parties implicitly acquiesced in the trial court's treatment of the motion to dismiss as a motion for summary judgment, and this Court will review the trial court's decision as a grant of summary judgment. *Id.*

"Appellate review of the grant of summary judgment is *de novo*." *Midwestern Health Mgmt., Inc. v. Walker*, 208 S.W.3d 295, 297 (Mo.App. W.D.2006). "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Hammack v. Coffelt Land Title, Inc.*, 284 S.W.3d 175, 177–78 (Mo.App. W.D.2009) (internal quotation omitted). "However, facts contained in affidavits or otherwise in support of a parties motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* at 178 (internal quotation omitted). "Summary judgment is appropriate only when the record demonstrates that there are no genuine disputes regarding material facts and that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation omitted).

Appellant concedes that, under well-established case law, "[l]egal malpractice claims are not now and have never been assignable in Missouri." *Freeman v. Basso*, 128 S.W.3d 138, 142 (Mo.App. S.D. 2004). The courts of this State, including this Court, have recognized that this type of assignment is against public policy. In reaching that conclusion, this Court found the reasoning in *Goodley v. Wank and*

*Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal. Rptr. 83 (1976) persuasive, stating:

> The *Goodley* court feared that assignment could lead to the acquisition of malpractice actions by economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and that this could place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between the attorney and client.

*White v. Auto Club Inter–Ins. Exchange*, 984 S.W.2d 156, 160 (Mo.App. W.D.1998) (internal quotations omitted). In White, we further noted:

> A fundamental policy concern is the undesirable risk of tempering an attorney's zeal with concern that a present adversary may become the holder of the client's alleged legal malpractice claim if the client suffers an unsatisfactory result. As a prospective judgment creditor, the former adversary may view the attorney as a source of collection. Moreover, just as adverse parties have sued their opponent's lawyer for malicious prosecution, there are some who seek an assignment against their former adversary's counsel for retaliation. These concerns can directly or subjectively detract from an attorney's loyalty, dedication and zeal in pursuing the client's claim.... Another policy concern is the risk of eroding the confidence within the attorney-client relationship. Although the risk of an attorney disclosing confidences necessary to the defense exists in any legal malpractice action, ... allowing an assignment could result in restraining some clients from full disclosure if they know they might offer a claim against their lawyers as part of the consideration to discharge liability. A corollary of that concern is that a nonclient has no concern for whether prosecution of a malpractice claim injures the defendant's former client.

*Id.* at 160 n. 9 (internal quotation omitted).

In its lone point on appeal, Appellant contends that the prohibition against the assignment of legal malpractice actions is not implicated in this case because the petition was filed in the name of the legal client, VinStickers, and not in the name of Hinkle and Karg. In Respondents' motion to dismiss, they set forth the relevant language contained in the settlement agreement. In responding to the motion to dismiss, Appellant conceded that the language of the settlement agreement set forth in the motion to dismiss was accurate, quoted that same language from the settlement agreement, and attached a copy of the agreement as an exhibit thereto. As noted *supra*, in the settlement agreement, VinStickers agreed to "quitclaim assign to Hinkle and Karg, and each of them, any and all right, title and interest in and to any legal malpractice claims" VinStickers had against Respondents. The settlement agreement further provided that "Karg and Hinkle shall secure legal counsel to prosecute such Claims, and they may bring the Claims in the name of VinStickers ... and may act in the name of, and on behalf of VinStickers for the limited purposes of pursuing, resolving and releasing the Claims." During the hearing on the motion to dismiss, counsel for the plaintiff acknowledged that Hinkle, Karg, and VinStickers were all his clients.

As found by the trial court, this was, indeed, an assignment of VinStickers' legal malpractice action to Karg and Hinkle. The whitewashing of the assignment by allowing Karg and Hinkle to pursue the

matter "in the name of VinStickers" does nothing to change that fact.

The petition alleged that Respondents "failed to properly lead the company through all the procedural requirements necessary under the Operating Agreement to remove [Hinkle and Karg] for cause." Thus, to prevail in the action, Appellant would need to prove that Hinkle and Karg should have been terminated for cause and, but for Respondents' malpractice, would have been. Having determined that the action was being brought by Hinkle and Karg in the name of VinStickers, the trial court was "faced with a situation in which the parties attempting to bring a claim for legal malpractice are the very parties who benefited from that malpractice (assuming that it occurred) during a previous stage of this litigation. The Missouri rule against assignment was created precisely so as to prevent this type of counterintuitive claim." *Freeman v. Basso*, 128 S.W.3d 138, 142 (Mo.App. S.D. 2004). Based upon the unambiguous language of the settlement agreement, the trial court correctly determined that the action was actually being brought by Karg and Hinkle pursuant to an improper assignment of a legal malpractice action and properly entered judgment in favor of Respondents as they were entitled to judgment as a matter of law.

Appellant further argues that the type of agreement reached between VinStickers and Hinkle and Karg was proper pursuant to the language of a concurring opinion filed in *Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655 (Mo.App. W.D.2008). That concurring opinion fully acknowledged that it was commenting on an issue not litigated by the parties and that the statements contained therein did not relate to the resolution of that appeal. *Id.* at 669. Accordingly, the language relied upon by Plaintiff is *obiter dicta* contained in a concurring opinion of a single judge. Moreover, *Johnson* involved the assignment of a bad faith failure to settle claim against an insurance company. The concurring opinion differentiated the assignment of bad faith failure to settle claims from the assignment of legal malpractice claims, expressly noting the existence of public policy differences relating to the assignment of bad faith failure to settle claims and assignment of legal malpractice claims. *Id.* at 674. Thus, the concurring opinion related solely to the assignment of bad faith failure to settle claims and cannot be fairly read to be commenting on the assignment of legal malpractice claims.[1] Point denied.

The judgment is affirmed.

All concur.

---

1. *See also Freeman v. Basso*, 128 S.W.3d 138, 143 (Mo.App. S.D.2004) ("[T]he rule against assigning claims for legal malpractice or breach of fiduciary duty is based on legitimate public policy considerations, and the same concerns do not apply to the assignment of claims for bad faith refusal to settle.").