Carol S. ROEDDER, Personal Representative of the Estate of Eugene D. Roedder, Appellant,

v.

Cheryl A. CALLIS and Kortenhof & Ely, PC, Respondents.

No. ED 97105.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 5, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 19, 2012.

Application for Transfer Denied
Sept. 25, 2012.

Laurence D. Mass St. Louis, MO, for appellant.

Kenneth C. Brostron, St. Louis, MO, for respondents.

### Introduction

PATRICIA L. COHEN, Presiding Judge.

Carol S. Roedder (Plaintiff), the personal representative of the estate of Eugene D. Roedder, appeals from the judgment of the Circuit Court of St. Louis County granting Cheryl Callis and Kortenhof & Ely, P.C.'s (Defendants) motion to dismiss for lack of legal capacity to bring suit. Plaintiff contends that the trial court erred in dismissing Mr. Roedder's claims of legal malpractice, breach of fiduciary duty, and punitive damages because these claims survived Mr. Roedder's death. We reverse.

### Background

On December 3, 2004, Mr. Roedder was involved in an automobile collision with Gregory V. Monroe. As a result of the collision, Mr. Monroe was rendered quadriplegic. On August 26, 2005, Mr. Monroe and his wife, E'Wana Monroe, filed suit against Mr. Roedder for injuries

resulting from the collision and loss of consortium. Defendant Cheryl Callis, an attorney with Kortenhof & Ely, P.C., represented Mr. Roedder during the lawsuit. Following a trial, the Circuit Court of St. Louis County entered judgment against Mr. Roedder and in favor of Mr. and Mrs. Monroe in the amount of $24,995,794.56.

On May 10, 2010, Mr. Roedder filed a lawsuit in the Circuit Court of the City of St. Louis against Defendants for legal malpractice, breach of fiduciary duty, and punitive damages.[1] Mr. Roedder alleged that Defendants' "negligence and carelessness" in handling his defense resulted in a judgment against him for "excessive actual damages." Mr. Roedder also alleged that Defendants breached their fiduciary duty by "plac[ing] the interests of the auto liability insurance carrier" above his interests. Shortly after filing his lawsuit, Mr. Roedder died. Defendants filed a suggestion of Mr. Roedder's death and moved to dismiss Mr. Roedder's case for improper venue or, in the alternative, to transfer venue to the Circuit Court of St. Louis County. On September 15, 2010, Plaintiff moved the trial court to substitute her as plaintiff in Mr. Roedder's lawsuit. The trial court granted the motion to substitute Plaintiff and transferred the case to the Circuit Court of St. Louis County.

■■■ Thereafter, Defendants filed a motion to dismiss on the grounds that Plaintiff lacked legal capacity to sue because Mr. Roedder's claims abated upon his death.[2] The trial court granted Defendants' motion without stating the basis for its decision.

### Standard of Review

■■■ The question of whether a party has standing is a question of law that we review de novo. *In Their Representative Capacity as Trustees for the Indian Springs Owners Ass'n v. Greeves*, 277 S.W.3d 793, 797 (Mo.App. E.D.2009).

### Discussion

In her sole point on appeal, Plaintiff contends that Mr. Roedder's "claims for legal malpractice, breach of fiduciary duty and punitive damages" survived his death and thus Plaintiff, as personal representative of Mr. Roedder's estate, was properly substituted as a plaintiff and has standing to pursue Mr. Roedder's claims on behalf of his estate. Defendants argue that Mr.

---

1. Mr. Roedder also named Kortenhof McGlynn LLC, the successor firm to Kortenhof & Ely, P.C., as a co-defendant in the same petition. Plaintiff voluntarily dismissed all claims against Kortenhof McGlynn LLC on July 19, 2011.

2. Although Defendants denominated their motion as a motion to dismiss for lack of legal capacity pursuant to Rule 55.27(a)(3), Defendants averred in paragraph 16 of their motion that Plaintiff lacked legal standing. To clarify the confusion created by Defendants' motion, "[s]tanding is the requisite interest that a person must have in a controversy before the court." *Mo. Nat. Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 275 (Mo.App. W.D. 2000). Standing "is not related to a person's capacity to sue, but is an adversary's interest in the subject of the suit as an antecedent to the right of relief." *State ex rel. Stewart v. Civil Serv. Comm'n of St. Louis*, 120 S.W.3d 279, 284 (Mo.App. E.D.2003). In short, "legal capacity to sue" and "standing" are two different concepts. The defense of lack of legal capacity must be timely filed while absence of standing may be asserted for the first time on appeal. *In Their Representative Capacity as Trustees for the Indian Springs Owners Ass'n v. Greeves*, 277 S.W.3d 793, 797–98 (Mo.App. E.D.2009). Because in their substantive arguments before the trial court, both parties treated this case as a challenge to standing and because, in any event, absence of standing may be asserted for the first time on appeal, we consider this appeal to address whether Plaintiff has standing to pursue Mr. Roedder's claims.

Roedder's claims abated with his death, do not survive to Plaintiff, and therefore, the trial court properly dismissed the case for lack of legal capacity.[3]

In arguing that Mr. Roedder's claims survive his death, Plaintiff relies on Missouri's survival statutes: Sections 537.010, 537.020 and 537.030.[4] Section 537.010 provides, in pertinent part, that:

> Actions for wrongs done to property or interests therein may be brought against the wrongdoer by the person whose property or interest therein is injured. If the person whose property or interest therein is injured is dead, the action survives and may be brought against the wrongdoer by the person appointed as fiduciary for the estate of the deceased person.

Section 537.020 provides, in pertinent part, that:

> Causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death, ... but in case of the death of [the injured party] such cause of action shall survive to the personal representative of such injured party....

Section 537.030 excepts four causes of action from survival: slander, libel, assault and battery, and false imprisonment.

### 1. Legal malpractice claim

■ Plaintiff contends that whether Mr. Roedder's legal malpractice claim is construed as an action for damage to property (based upon a failure to protect Mr. Roed-

der's financial interest) and thereby covered by Section 537.010, or as an action for personal injury and thereby covered by Section 537.020, Missouri's survival statutes prevent the abatement of Mr. Roedder's legal malpractice claim. Defendants, by contrast, argue that because legal malpractice cannot be defined solely as either a personal injury or an injury to property, Missouri's survival statutes do not operate to prevent abatement of Mr. Roedder's legal malpractice claim.

In support of her contention that Mr. Roedder's legal malpractice claim survives his death, Plaintiff relies heavily on *Gray v. Wallace*, 319 S.W.2d 582 (Mo.1959). In *Gray*, the Supreme Court addressed the interplay of Section 537.020 and Section 537.030 in the context of the survival of a claim for malicious prosecution. *Id.* at 583. Although not entirely clear, it appears that in *Gray*, the defendant argued that malicious prosecution, like false imprisonment, which is excepted in Section 537.030, did not survive by virtue of Section 537.020 because it is an injury to "one's personal rights as distinguished from an injury to his person." *Id.* at 585. The Supreme Court rejected such a narrow reading of Section 537.020, holding that "it is clear that the legislature used the expression 'personal injuries' in Section 537.020 in its broadest and most comprehensive sense...." *Id.* at 584. Thus, the Court held, "[i]t must follow that the legislature intended that the term 'personal injuries' was to include all actions for injuries to the person whether to the per-

---

**3.** In the conclusion to their brief on appeal, Defendants state that Plaintiff, "does not have legal standing to sue" and "[c]onsequently, this cause was properly dismissed pursuant to Rule 55.27(a)(3)." As noted above, this matter is properly treated as challenging Plaintiff's standing rather than Plaintiff's legal capacity to sue. Although the trial judge did not dismiss the case on the basis of absence of standing, the parties' arguments on appeal consistently address standing, rather than capacity.

**4.** All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

son's rights or to his body." IcL After determining that malicious prosecution constituted a personal injury within the meaning of 537.020, the Court held that because malicious prosecution was not specifically excepted from survival by Section 537.030, it did not abate by reason of the death of a party. *Id.* at 585–86.

*Gray* is instructive in several respects. First, *Gray* sets out a two-step framework for determining whether a claim survives: (1) is the claim a cause of action for "personal injuries" within the meaning of Section 537.020; and (2) if so, is the claim excepted by Section 537.030. Second, *Gray* compels us to construe the term "personal injuries" in the context of survival in "its broadest and most comprehensive sense." *Id.* at 584. Third, *Gray* expressly directs that in determining whether a cause of action is excepted by Section 537.030, "only those actions specifically named were to be excepted from those which do not abate." IcL at 584.

 Guided by *Gray*, we first determine whether Missouri's survival statutes include actions for legal malpractice.[5] As Defendants correctly note, legal malpractice implicates both an injury to personal rights and property interests. *See White v. Auto Club Inter–Ins. Exch.*, 984 S.W.2d 156, 159 (Mo.App. W.D.1998). As the court concluded in *White*: "While the injuries sustained in a legal malpractice action involve property interests, the relationship between an attorney and his or her client is pre-eminently personal." 984 S.W.2d at 159 (*citing Christison v. Jones*, 83 Ill. App.3d 334, 39 Ill.Dec. 560, 405 N.E.2d 8, 11 (1980)). Given the *Gray* court's direction to expansively construe the surviv-

al statutes, we conclude that whether legal malpractice is considered an injury to a personal right or to an intangible personal property interest, it is covered by Missouri's comprehensive survival statutes.

We next consider whether legal malpractice claims are excepted by Section 537.030. Because legal malpractice is not "specifically named," it is not excepted from survival pursuant to Section 537.030. *Gray*, 319 S.W.2d at 584.

Despite the *Gray* court's clear direction to broadly construe the survival statutes and narrowly construe the exceptions, Defendants argue that the "unique" nature of legal malpractice claims requires abatement, citing *State ex rel. Nat'l Ref. Co. v. Seehorn*, 344 Mo. 547, 127 S.W.2d 418 (1939). We disagree. The claim at issue in *Seehorn* was a husband's loss of consortium. *Id.* at 420. Contrary to Defendants' suggestion in their brief, the plaintiff in *Seehorn* did not invoke the predecessor statute to 537.020 (Section 3280 RSMo 1929) because "[i]t [did] not apply to one who has sustained indirect or consequential damages." *Id.* at 421 (*quoting Toomey v. Wells*, 218 Mo.App. 534, 280 S.W. 441, 443 (1926) (internal quotation marks omitted)). Rather, the plaintiff relied on the predecessor statute to 537.010 (Section 98 RSMo 1929). *Seehorn*, 127 S.W.2d at 421. The Court concluded that the husband's loss of consortium claim did not survive under Section 98 because deprivation of a wife's comfort, society, and services is not a "wrong done to a husband's property right or interest." *Id.* at 422. Thus, *Seehorn* does not stand for the proposition that a cause of action that contains elements of both a wrong to a property

---

5. Although *Gray* specifically addressed Section 537.020, its rationale also properly applies to the companion statute, Section 537.010. *See State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991) (statutes relating to the same subject matter are construed in pari materia and are "intended to be read consistently and harmoniously").

right and a personal interest necessarily abates. Quite in contrast to this case, in *Seehorn,* the court determined that the underlying cause of action contained neither elements of a personal injury claim within the meaning of the survival statutes (because the consortium claim was derivative) nor elements of an injury to property (because a wife's comfort does not constitute a husband's property).[6]

It is worthwhile considering that Illinois courts, the source in *White* of the characterization of the nature of a legal malpractice claim, have held that legal malpractice claims survive under the Illinois survival statute, which permits the survival of, among other things, "actions to recover damages for an injury to the person (except slander and libel)" and "actions to recover damages for an injury to real or personal property." *Jones v. Siesennop,* 55 Ill.App.3d 1037, 13 Ill.Dec. 800, 371 N.E.2d 892, 894 n. 1, 894–896 (1977) (*quoting* Ill.Ann.Stat. ch. 3, par. 27–6 (Smith–Hurd 1977 Supp.) (internal quotation marks omitted)) (construing a claim of professional negligence against an attorney as "personal property"). In reaching its conclusion, the *Jones* court held that "[t]he survival statute is remedial in nature and is to be liberally construed." 13 Ill.Dec. 800, 371 N.E.2d at 895. The *Jones* court also cited with approval the following excerpt from Prosser:

(T)he modern trend is definitely toward the view that tort causes of action and liabilities are as fairly a part of the estate of either plaintiff or defendant as

contract debts, and that the question is rather one of why a fortuitous event such as death should extinguish a valid action. Accordingly, survival statutes gradually are being extended; and it may be expected that ultimately all tort actions will survive to the same extent as those founded on contract.

*Id.* at 896 (*quoting* William L. Prosser, Handbook of the Law of Torts 901 (4th ed.1971) (quotation marks omitted)). A more recent commentary on the "trend," concludes as follows: "The growing trend is that the legal malpractice claim survives the client's death and may be pursued by the client's personal representative or heirs." Spence Chadwick Lee, Comment, *Survival of a Legal Malpractice Claim After the Client's Death,* 20 J. Legal Prof. 259, 259 (1995). Likewise, in the definitive treatise on legal malpractice, the authors state: "The modern statutes and decisions assure, however, that a legal malpractice action survives the client's death and exists in favor of the client's estate." 1 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice, § 7:10, at 813 (2012).

■■■ Defendants additionally assert that in analyzing the survivability of legal malpractice claims, the court should "observe the rules regarding assignment of these cases," namely "whether a cause of action is assignable is whether or not it would survive to the personal representative." More specifically, Defendants contend that because the court determined in

---

6. We note that nearly 200 years ago, English courts considering whether legal malpractice survived the death of the client, grappled with the significance of the "form" of legal malpractice claims: "But it has been admitted, and most properly, that it is immaterial whether it be in the form of tort or contract, as the substance only must be looked at.... Can it for a moment be doubted, but that an injury was sustained to the personal estate of

the intestate, by the defendant's not investigating the title?" *Knights v. Quarles,* (1820), *reported in* 4 Reports of Cases Argued and Determined in the Courts of Common Pleas and Exchequer Chamber, at 538 (John Bayly Moore ed. 1822). *See also Stanley v. Vogel,* 9 Mo.App. 98 (1880) (the nature of the injury rather than the form of the action is the "decisive test" when determining survival).

*White v. Auto Club Inter–Ins. Exch.* that legal malpractice claims are not assignable, we should consequently "deduce" that legal malpractice claims do not survive the death of the injured party. As an initial matter, the basis for Defendants' argument is flawed. This court has rejected the proposition that the test for assignability "depends solely upon whether [the cause of action] survives and adopt[ed] the rule that such causes of action may not be assigned prior to judgment for reasons of public policy." *Forsthove v. Hardware Dealers Mut. Fire Ins. Co.,* 416 S.W.2d 208, 217 (Mo.App.1967). As the court held in *Traver v. State Farm Mut. Auto. Ins. Co.,* 930 S.W.2d 862 (Tex.App.1996), when it rejected the identical argument Defendants assert here, "although a cause of action must survive to be assignable, not every action that survives is assignable." *Id.* at 871.

Indeed, in *White,* the court did not rely on a survivability test when it determined that legal malpractice claims were not assignable. Rather, the *White* court concluded that legal malpractice claims were not assignable for reasons of public policy. 984 S.W.2d at 160. The court determined that:

> [A]ssignment [of legal malpractice claims] could lead to the acquisition of malpractice actions by economic bidders 'who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty,' and ... this could 'place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.'

*Id.* at 160 (*quoting Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal. Rptr. 83, 87 (1976)) These clearly legitimate public policy concerns are absent here. Permitting survival of legal malpractice claims is unlikely to overburden the judicial system, because "[t]he estate's suit is identical to one the client could have brought during his lifetime." *Smith v. O'Donnell,* 288 S.W.3d 417, 421 (Tex.2009). Nor will the survival of legal malpractice actions either restrict the availability of legal services or undermine the fiduciary nature of the attorney-client relationship, because the estate's interests "mirror those of the decedent." *Id. See also Donahue v. Shughart, Thomson & Kilroy, P.C.,* 900 S.W.2d 624, 626–629 (Mo. banc 1995) (permitting non-client causes of action for legal malpractice). Finally, we are not concerned that allowing survival of legal malpractice claims will erode attorney-client confidentiality. *Traver,* 930 S.W.2d at 871 ("Allowing a legal malpractice claim to survive the death of either the client or the attorney does not violate the sanctity of the attorney-client relationship...."). *See also Estate of Hebbeler,* 875 S.W.2d 163, 168 (Mo.App. E.D.1994) ("[A]fter the death of a client, the attorney-client privilege can be waived by a representative of the client.").

A primary function of tort law is to provide compensation to injured persons. *See* 1 Dan B. Dobbs et al., The Law of Torts § 10, at 18 (2d ed.2011). Allowing the personal representative of an estate to seek recovery for the damage caused by legal malpractice enhances the public policy of providing compensation to injured parties. As the court in *Jones* stated when it determined that legal malpractice survives the death of the injured party under Illinois law:

> The reason for the rule of abatement was the common law notion that a tort was originally regarded as punitive in character, whereas today damages for

most torts are regarded as compensatory. Therefore, there is no reason why an estate that has been injured or depleted by the wrong of another should not be compensated whether the injured party is living or not.

13 Ill.Dec. 800, 371 N.E.2d at 895 (citation and internal quotation marks omitted). In light of our Supreme Court's determination in *Gray* that the legislature intended a broad and comprehensive construction of Missouri's survival statutes, we agree with the *Jones* court and the majority of courts that have concluded that legal malpractice actions survive the death of the injured party.

## 2. Breach of Fiduciary Duty claim

 Neither Plaintiff nor Defendants address in the substantive portions of their briefs whether a claim for breach of fiduciary duty, as a cause of action distinct from legal malpractice, survives. However, rather than conflate the arguments as the parties have done, we separately consider the breach of fiduciary duty claim. In so doing, we are not deciding whether the allegations of the petition in fact support a separate claim for breach of fiduciary duty.

In *Klemme v. Best*, 941 S.W.2d 493 (Mo. banc 1997), the Supreme Court described legal malpractice claims as negligence claims and breach of fiduciary duty claims as fraud claims. *Id.* at 495–96. In *Breeden v. Hueser*, 273 S.W.3d 1 (Mo.App. W.D.2008), the Western District held that pursuant to Section 537.010 fraud claims survive the death of the plaintiff. *Id.* at 11–13. We agree with the Western District's analysis in *Breeden*. Therefore, we conclude that Mr. Roedder's breach of fiduciary duty claim survives his death.

## 3. Punitive damages

 Plaintiff contends that because Mr. Roedder's claims for legal malpractice and breach of fiduciary duty survive, his claim for punitive damages also survives. To determine whether punitive damages are recoverable in the context of Missouri's survival statutes, "we look, absent legislative intent to the contrary, to damages normally allowed in a particular cause of action." *State ex rel. Smith v. Greene*, 494 S.W.2d 55, 59 (Mo. banc 1973). More specifically, "where a cause of action for which punitive damages may be recovered survives, the claim for punitive damages also survives." *E. Atl. Transp. & Mech. Eng'g, Inc. v. Dingman*, 727 S.W.2d 418, 423 (Mo.App. W.D.1987). Missouri law permits recovery of punitive damages in both legal malpractice and breach of fiduciary claims. *See, e.g., Arana v. Koerner*, 735 S.W.2d 729, 736–37 (Mo.App. W.D. 1987) (legal malpractice); *Grewell v. State Farm Mut. Auto. Ins. Co.*, 162 S.W.3d 503, 508 (Mo.App. W.D.2005) (breach of fiduciary duty). Accordingly, because Mr. Roedder's causes of action for legal malpractice and breach of fiduciary duty survive, his request for punitive damages also survives.[7]

### Conclusion

The judgment of the circuit court is reversed and this matter is remanded for proceedings consistent with this opinion.

ROY L. RICHTER, J., and ROBERT M. CLAYTON III, J., concur.

---

7. Defendants assertion that Plaintiff's claim for punitive damages abates because it is "derivative of Plaintiff's claims for legal malpractice and breach of fiduciary duty" rests upon a fundamental misunderstanding of the nature of punitive damages. A claim for puni-

tive damages "is not a separate cause of action." *Klein v. Gen. Elec. Co.*, 728 S.W.2d 670, 671 (Mo.App. E.D.1987). *See also Greene*, 494 S.W.2d at 59 (damages do not constitute a cause of action but "are merely incidental to the cause of action.").